IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 28, 2006

## LARRY P. CONWAY AND MARILYN J. CONWAY

v.

## EASTERN SAVINGS BANK, FSB

**An Appeal from the Chancery Court for Shelby County**
**No. CH-04-1950-3     D. J. Alissandratos, Chancellor**

_____

**No. W2005-02919-COA-R3-CV - Filed December 11, 2006**

_____

This is a petition to set aside a foreclosure sale. The plaintiffs, husband and wife, borrowed over $1.1 million from the defendant bank in order to buy the subject home. The plaintiffs later defaulted on the loan. The husband filed a petition in bankruptcy and listed the home as a part of his bankruptcy estate. The bank obtained relief from the automatic stay, accelerated the debt, and began foreclosure proceedings. The day before the scheduled foreclosure sale, the wife filed a petition in bankruptcy and listed the home as part of her bankruptcy estate. The foreclosure sale was postponed. The bank obtained relief from the automatic stay in the wife's bankruptcy case, and the foreclosure sale was conducted. The bank purchased the home for a credit bid of $750,000. Eight months later, the husband and wife filed this action for injunctive relief and to vacate the foreclosure sale. They alleged, among other things, inadequate consideration and lack of proper notice. The bank filed a motion for summary judgment, which was granted based in part on earlier findings by the bankruptcy court in the plaintiffs' bankruptcy proceedings. The husband and wife now appeal, again arguing inadequate consideration and lack of notice. We affirm, finding that the plaintiffs failed to proffer sufficient evidence to create a genuine issue of fact for trial.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Venita Marie Martin, Memphis, Tennessee, for the appellants, Larry P. Conway and Marilyn J. Conway.[1]

Joel W. Giddens and Jason S. Mangrum, Memphis, Tennessee, for the appellee, Eastern Savings Bank, FSB.

---

[1] After the filing of their appellate brief, Attorney Martin was permitted to withdraw as counsel for the appellants by order of this Court dated May 3, 2006.

**OPINION**

In October 2000, Plaintiffs/Appellants Larry P. Conway and Marilyn J. Conway (collectively, "the Conways"), husband and wife, purchased a home at 6099 Shady Grove Road in Memphis, Tennessee ("the Shady Grove property" or "the property"), which is the subject of this lawsuit. In connection with the purchase, the Conways executed a deed of trust securing payment of a note in the principle sum of $1,160,000. Defendant/Appellee Eastern Savings Bank, FSB, is the successor in interest to the original lender, Sovereign Mortgage Corporation, and other predecessors in interest.[2]

On July 1, 2001, the Conways defaulted under the terms of their mortgage by failing to pay the monthly note due of $11,761. On February 26, 2002, Mr. Conway filed a bankruptcy petition under Chapter 11, seeking reorganization, and he listed the Shady Grove home as a part of his bankruptcy estate.[3]

On May 14, 2003, the Bank filed a motion in the bankruptcy court for relief from the automatic stay in order to foreclose on the Shady Grove property. On September 25, 2003, the bankruptcy court conducted a hearing in the matter. On September 30, 2003, the bankruptcy court entered an order making findings of fact and authorizing the Bank to proceed with foreclosure. In its order, the bankruptcy court found that the property was "valued at $750,000.00," and that the total debt on the home at the time of the hearing was in excess of $1.4 million. Proceeding *pro se*, Mr. Conway appealed the order. He did not, however, obtain a stay of the order, and the foreclosure proceedings went forward.

Shortly after obtaining relief from the automatic stay, the Bank accelerated payments. Through its substitute trustee, Robert M. Wilson, Jr. ("Wilson"), the Bank advertised the property for sale and notified the Conways of its intent to foreclose on the property. In November 2003, the Bank sent the Conways a Notice of Trustee's Sale via certified mail and regular mail, along with a letter informing them of the foreclosure sale date of December 19, 2003 at 12:00 p.m. at the Shelby County, Tennessee, Courthouse. The amount owed on the note at the time of foreclosure was $1,489,461.23.

On December 18, 2003, in an effort to prevent the sale of her home, Mrs. Conway, acting *pro se*, filed her own Chapter 11 bankruptcy petition. She also listed the Shady Grove home as part of her bankruptcy estate. This resulted in another automatic stay. In light of Mrs. Conway's petition, the December 19 foreclosure sale was postponed until January 9, 2004. On December 23, 2003, the Bank filed a motion seeking relief from this second automatic stay in order to proceed with the foreclosure. The foreclosure sale was again postponed until January 16, 2004. On January 12, 2004,

---

[2] The Eastern Savings Bank and its predecessors in interest will be referred to as "the Bank."

[3] Prior to confirmation of the Chapter 11 plan, the bankruptcy court converted his Chapter 11 case to a Chapter 7 liquidation case.

the bankruptcy court granted the Bank relief from the automatic stay. Mrs. Conway appealed, but she did not obtain a stay pending appeal.[4]

On January 16, 2003, prior to Mrs. Conway's appeal, the Bank foreclosed on the Shady Grove home. At the foreclosure sale, the Bank bought the property for a credit bid of $750,000.

On February 4, 2004, Mrs. Conway, again acting *pro se*, filed a motion in the bankruptcy court requesting reinstatement of the automatic stay in her case. The bankruptcy court heard Mrs. Conway's motion, and on February 25, 2004, denied her request.

On February 9, 2004, the Bank filed a forcible entry and detainer ("FED") action in the Shelby County General Sessions Court to remove the Conways from the Shady Grove home. In March 2004, a judgment was entered in the Bank's favor. The Conways, again acting *pro se*, appealed the general sessions court judgment to the Shelby County Circuit Court. The circuit court affirmed the Bank's judgment of possession.

On September 28, 2004, eight months after the foreclosure sale, the Conways filed the instant complaint against the Bank in the Shelby County Chancery Court. The complaint was entitled "Verified Complaint for Injunctive Relief, to Vacate Foreclosure Sale for Inadequacy of Consideration for Damages, and to Impress a Lien *Lis Pendens*." It alleged that the Bank bought the Shady Grove home for an inadequate price, failed to provide the Conways notice of the foreclosure sale date pursuant to the deed of trust and Tennessee law, failed to advertise the foreclosure sale pursuant to Tennessee Code Annotated § 35-5-101, breached its duty of good faith and fair dealing, and engaged in a civil conspiracy. Attached to the complaint was a March 13, 2004 appraisal valuing the property at $2.1 million. The appraisal was procured by the Conways to prove the actual value of the property. When the Conways filed the complaint, they obtained an *ex parte* temporary restraining order permitting them to remain in possession of the home.

On June 27, 2005, the Chancery Court conducted a hearing on the Conways' request for a temporary injunction. The appellate record does not include a transcript of that hearing. On July 1, 2005, the Chancery Court entered an order denying the Conways' request for a temporary injunction. Based on the complaint, the hearing, and the final orders of the bankruptcy court, the Chancery Court made the following findings of fact:

> 1) Proper notice, pursuant to the Deed of Trust executed by the Plaintiffs and pursuant to Tennessee Code Annotated §§ 35-5-101 *et seq.*, of the trustee's sale held by the Substitute Trustee as to the [Shady Grove property] at the Shelby County Courthouse on behalf of Eastern Savings Bank (Defendant) on January 16, 2004 was given to [the Conways]; further, the Court finds that the Substitute Trustee properly adjourned the originally scheduled trustee's sale from December 19, 2003 at 12:00 p.m. to January 9, 2004 at 12 p.m. and then to January 16, 2004 at 12:00 p.m. at

---

[4]There is no indication in the record that Mrs. Conway's appeal is pending; presumably it was later dismissed.

which date and time the property was sold to Eastern Savings Bank for the amount of $750,000;

2) Plaintiffs' allegations that they were unaware of the pending foreclosure sale, and that Defendant never notified them of the pending trustee's sale are without merit given the findings of facts and conclusions of law contained in the Opinion and Order on Debtor's Motion/Complaint to Reinstate the Automatic Stay entered on the docket of the Bankruptcy Court for the Western District of Tennessee in case no. 03-41589 WHB, Adv. Proceeding No. 04-0085 on or about February 25, 2004, which is incorporated into this Court's finding of facts and conclusions of law in this order;

3) Plaintiffs' allegation that the credit sale price of $750,000.00 made by Defendant was substantially less than the value of the property is without merit given the findings of facts and conclusions of law set forth in Order Granting Amended Motion for Relief From the Automatic Stay Provisions of the Bankruptcy Code and to Require the Trustee to Abandon Interest in Collateral entered on the docket of the Bankruptcy Court for the Western District of Tennessee in case no. 02-23559 JDL on September 30, 2003, which is incorporated into this Court's finding of facts and conclusions of law in this order . . . .

Thus, the request for a temporary injunction was denied based on these factual findings and the trial court's conclusion that the Conways did not have a substantial likelihood of success on the merits of their complaint. Thereafter, the Bank obtained possession of the property.[5]

On August 5, 2005, the Bank filed a motion for summary judgment in the underlying Chancery Court action. In their response to the motion, the Conways claimed that they were not provided with notice of the foreclosure sale, they were not afforded an opportunity to cure the default, and that the Bank failed to properly advertise the sale. The Conways also asserted that the Bank refused to provide them information regarding the day, time, and location of the foreclosure sale, and that the purchase price of $750,000 was inadequate. In support of their response, the Conways submitted the affidavit of Mrs. Conway, in which she, in effect, restated the allegations in the complaint.

On November 4, 2005, the Chancery Court held a hearing on the Bank's motion for summary judgment. At the conclusion of the hearing, the Chancery Court granted the Bank's motion, stating that the findings of fact necessary for resolution of the motion had already been determined in its July 1, 2005 order denying the Conways' request for a temporary injunction. On November 18, 2005, the Chancery Court entered an order consistent with its oral ruling. From this order, the Conways now appeal.

On appeal, the Conways argue that the trial court erred in granting the Bank summary judgment. They first assert that the Bank failed to comply with the foreclosure notice provisions in

_____

[5]On October 2, 2004, the Bank removed the matter to the bankruptcy court, but the case was subsequently remanded by order dated March 31, 2005.

Tennessee Code Annotated §§ 35-5-101(a) and (b) by failing to advertise the sale three different times at least twenty days prior to the sale. Furthermore, the Conways argue, the Bank denied them the right to cure their default, as provided in the deed of trust on the property. Finally, the Conways claim that the sale of the property "was wholly lacking of consideration," because the purchase price of $750,000 was less than half of the true value of the property. Thus, the Conways argue, the Bank's motion for summary judgment should have been denied.

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We must view the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. **Warren**, 954 S.W.2d at 723 (quoting **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material fact exist, the non-moving party must show, by affidavit or otherwise, that a disputed issue of material fact exists for trial. **Byrd v. Hall**, 847 S.W.2d 208, 211 (Tenn. 1993).

In order to set aside a foreclosure sale, the plaintiff must show more than inadequacy of the purchase price. The plaintiff must submit "some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale." **Holt v. Citizens Central Bank**, 688 S.W.2d 414, 416 (Tenn. 1984); *see B&H Invs. v. Brooks*, No. W1999-01252-COA-R3-CV, 2000 WL 1141566, at *2 (Tenn. Ct. App. Aug. 10, 2000).

In this case, the Chancery Court's grant of summary judgment in favor of the Bank was based on the findings of fact set out in its July 1, 2005 order denying the Conways' motion for a temporary injunction. In the July 1, 2005 order, the Chancery Court noted that the foreclosure sale originally scheduled for December 19, 2003, had been postponed first to January 9, 2004, and then to January 16, 2004, and found that proper notice of the foreclosure sale had been issued "pursuant to the Deed of Trust . . . and pursuant to Tennessee Code Annotated §§ 35-5-101 *et seq.* . . ." The Chancery Court discounted the Conways' assertion that they were unaware of the pending foreclosure sale, citing the findings of the bankruptcy court in the February 25, 2004 order entered in Mrs. Conway's case. The Chancery Court also rejected the Conways' argument that the foreclosure sale price of $750,000 was substantially less than the true value of the property, citing the bankruptcy court's finding in the September 30, 2003 order entered in Mr. Conway's bankruptcy case. Both of the bankruptcy court orders on which the Chancery Court relied were incorporated by reference into the Chancery Court's July 1, 2005 order.

Because the Chancery Court relied in part on the findings in the bankruptcy court's September 30, 2003 and February 25, 2004 orders, a review of those orders is helpful.[6]

In its September 30, 2003 order, the bankruptcy court granted the Bank's motion for relief from the automatic stay in Mr. Conway's case. In the order, the bankruptcy court indicated that it had reviewed the evidence presented and made the specific finding that the Shady Grove property "is valued at $750,000.00."

In the February 25, 2004 order, entered in Mrs. Conway's case, the bankruptcy court denied Mrs. Conway's motion to reinstate the automatic stay. In her motion, Mrs. Conway argued that she was denied due process because she was not given notice of the hearing on the Bank's motion for relief from the automatic stay in her case. The bankruptcy court rejected Mrs. Conway's due process argument, finding that she did, in fact, receive notice of the hearing. The bankruptcy court observed: "[t]here is no indication that Ms. Conway was unaware of what was happening in her husband's case. These parties are living together in the [Shady Grove home], and they executed the complaint in this current case together . . . ." The bankruptcy court noted that Mr. Conway had been resisting the foreclosure for some time, and stated that there was "no indication that the Conways keep secrets from each other; rather, they joined in a complaint alleging fraud on the part of [the Bank] and others." The bankruptcy court concluded, "it is not believable that Ms. Conway was unaware of [the Bank's] foreclosure." It noted that the sale of the Shady Grove home "was quick, but under the circumstances of the prior bankruptcy filed by Mr. Conway, it is apparent that the Conways are attempting to stall [the Bank's] relief by any means, including what is obviously a bad-faith filing of bankruptcy by Ms. Conway." The bankruptcy court commented that the bad faith underlying Mrs. Conway's bankruptcy petition was evident because "it is obvious from her schedules that she is not an appropriate chapter 11 debtor. . . . [She] filed this bankruptcy case while having no source of income and without any means to provide [the Bank] with adequate protection." It found that the timing of Mrs. Conway's bankruptcy petition also showed bad faith: "The most compelling fact that overcomes Ms. Conway's assertions of ignorance about the foreclosure is the timing of her filing for bankruptcy. She filed one day before the scheduled foreclosure. . . . Her filing was in bad faith, since the issues regarding [the Bank's] foreclosure are the same as the issues existing in Mr. Conway's case . . . ." There is no indication in the appellate record before us that the findings by the bankruptcy court were appealed.

Based on the bankruptcy court findings, the Chancery Court denied the Conways' request for a temporary injunction. The bankruptcy court's factual findings were also the basis for the Chancery Court's grant of summary judgment in favor of the Bank:

> The Court finds that the Court has already ruled in its July 1 Order of this year on the issues of fact that the Plaintiffs maintained their dispute. But as a matter of law in this case is res judicata. That was the law in this case. The people may not like the

---

[6]Both orders were made part of the appellate record.

ruling in this court, but the Court has already adjudicated that matter. So therefore, the Court finds the Motion should be granted.

On appeal, the Conways do not argue that the trial court erred in relying on the bankruptcy court's findings or in applying the law of the case doctrine or the principles of *res judicata*. Rather, the Conways claim that three factual issues remain which are germane to the issue of whether there was sufficient "irregularity, misconduct, fraud, or unfairness" in the foreclosure sale to justify setting it aside. The Conways assert that (1) the Bank failed to comply with the advertisement requirements of Tennessee Code Annotated §§ 35-5-101(a) and (b) prior to the January 16, 2004 foreclosure sale; (2) the Conways' deed of trust gave them the right to cure defects prior to the foreclosure sale but the Bank denied them that right; and (3) because the $750,000 sale price was inadequate, the foreclosure sale was wholly without consideration.

Tennessee Code Annotated §§ 35-5-101(a) and (b), cited by the Conways, mandate that in a foreclosure of this kind, "advertisement of such sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made," and that "[t]he first publication shall be at least twenty (20) days previous to the sale." T.C.A. § 35-5-101(a), (b) (2001). It is undisputed that, after Mrs. Conway filed her bankruptcy petition, the Bank did not repeat the notification process pursuant to §§ 35-5-101(a) and (b). The Bank notes, however, that proper notification in compliance with the statute was given for the original foreclosure sale scheduled for December 19, 2003, before Mrs. Conway's bankruptcy petition was filed, and argues that this was sufficient notice of the foreclosure sale that eventually took place. The Conways do not dispute that sufficient notice was given of the original date and time for the foreclosure. As the bankruptcy court observed, the Conways' dogged resistance to every step of the foreclosure proceedings demonstrated that they were keenly aware of the foreclosure process. Under these circumstances, the Bank argues, even if the January 16, 2004 foreclosure sale was not advertised in accordance with the precise terms of the statute, this would not amount to irregularity or unfairness that would justify setting aside the sale.

In its July 1, 2005 order, the Chancery Court held that "[p]roper notice, pursuant to the Deed of Trust executed by the Plaintiffs and pursuant to Tennessee Code Annotated §§ 35-5-101 *et seq.*, of the trustee's sale . . . was given to [the Conways]." This order was issued after the June 27, 2005 hearing on the Bank's summary judgment motion. The record has no transcript or other identification of evidence submitted at the hearing. Therefore, the only evidence in the record proffered by the Conways in opposition to the Bank's motion was the affidavit of Mrs. Conway, in which she simply denies having received proper notice of the sale. This conclusory assertion is not sufficient to create a genuine issue of material fact regarding whether the Bank's failure to comply with the statute rendered the process unfair or irregular. Under section 35-5-106, the failure to comply with the advertisement provisions in the statutes regarding trust deed sales, in and of itself, does not render a sale void or voidable. T.C.A. § 35-5-106 (2001); *see Doty v. Fed. Land Bank of Louisville*, 89 S.W.2d 337, 339 (Tenn. 1936). Under all of these circumstances, we must affirm the Chancery Court's holding that the Bank's failure to re-advertise three times, twenty days prior to the

rescheduled foreclosure date does not render the sale irregular or unfair, and it does not warrant setting aside the foreclosure sale.

The Conways next argue that the foreclosure sale should be set aside because, after Mrs. Conway filed her bankruptcy petition, they were not given an opportunity to cure their defect, a right which the deed of trust provides. In support of this claim, the Conways again rely on Mrs. Conway's affidavit. As with the notice issue, the affidavit contains only the conclusory statement that the Bank "denied me the right to cure. . . . Prior to foreclosure, [the Bank] denied us the opportunity to cure their [sic] alleged default." When responding to a motion for summary judgment, the nonmoving party cannot simply rely on his or her pleadings, "but must set forth *specific facts* showing that there is a genuine issue of material fact for trial." *Byrd*, 847 S.W.2d at 211. Mrs. Conway's affidavit fails to set forth specific facts sufficient to create a genuine issue of material fact on this issue. It is undisputed that the Conways defaulted on their obligation to the Bank in July 2001. The record also reflects that the Conways resisted the foreclosure at every turn. However, in her affidavit, Mrs. Conway does not assert that either she or Mr. Conway offered to cure, were able to cure, or that their offer to cure was rejected by the Bank at any point along the way. This argument is without merit.

Finally, the Conways contend that the foreclosure sale should be set aside because it was "wholly lacking of consideration," arguing that the foreclosure price of $750,000 for the property was insufficient in light of the Conways' March 2004 appraisal of $2.1 million. It is well settled that, even when the sale price is shockingly disproportionate to the actual value of the property, inadequacy of the price alone is an insufficient basis on which to set aside a foreclosure sale. *Holt*, 688 S.W.2d at 416; *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, 855 (Tenn. Ct. App. 2002). In this case, the bankruptcy court held a hearing in which it considered, among other issues, the value of the Shady Grove home. After evaluating the proof on this issue, it determined that the property had an actual appraised value of $750,000.[7] Even assuming this is an inadequate price for the Shady Grove property, we would not set aside the sale because, with no other evidence of "irregularity, misconduct, fraud, or unfairness," the sale price alone is not a basis on which to set aside the foreclosure sale. Therefore, the Chancery Court's grant of summary judgment in favor of the Bank was appropriate.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellants Larry P. Conway and Marilyn J. Conway, and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[7]We recognize that the bankruptcy court did not have the benefit of the appraisal submitted by the Conways to the Chancery Court as proof of the value of the property. Because an inadequate price alone may not serve as a basis on which to set aside a foreclosure sale, we need not address the issue of whether Mr. and/or Mrs. Conway are collaterally estopped from litigating the actual value of the property. *See generally Paverite, Inc. v. ITT Indus. Credit Co.*, 621 S.W.2d 759, 762-63 (Tenn. Ct. App. 1981).