IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2002 Session

## ORLANDO RESIDENCE, LTD. v. NASHVILLE LODGING CO., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 92-3086-III     Ellen Hobbs Lyle, Chancellor**

_____

**No. M2001-00648-COA-R3-CV - Filed May 21, 2002**

_____

This is an action for damages for the fraudulent conveyance of a Nashville hotel to defeat the rights of a creditor of the original owner. After a trial and two prior appeals, the Chancery Court of Davidson County tried the case on the merits again in August of 2000. The jury returned a verdict in favor of the plaintiffs for $797,615. The defendants assert on appeal that the statute of limitations barred the claim, that the trial court erred in miscalculating the defendants' claim for restitution, and that there is no evidence in the record to support a finding that the transfer was fraudulent. We reverse the lower court's ruling that as a matter of law the statute of limitations had not run. In all other respects we affirm the lower court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Reversed in Part; and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and JANE W. WHEATCRAFT, SP. J. joined.

Samuel L. Felker and Joseph F. Welborn, III, Nashville, Tennessee for the appellants, Nashville Lodging Company, Nashville Residence Corporation and Kenneth E. Nelson.

Eugene N. Bulso, Jr. and Rebecca C. Blair, Nashville, Tennessee for the appellee, Orlando Residence, Ltd.

### OPINION

For the third time we find ourselves reciting the facts that precipitated this controversy. Since the facts have not changed, we adopt the relevant parts of our most recent opinion, _Orlando Residence, Ltd. v. Nashville Lodging Co., et al._, No. 01A01-9807-CH-00357A, slip. op. at 1-3 (Tenn. Ct. App. Nov. 17, 1999):

The seeds of the present dispute were sown in 1981 when Samuel H. Hardige hired Kenneth E. Nelson to oversee one of his businesses. Mr. Hardige fired Mr. Nelson a short time later, thereby precipitating considerable litigation between Mr. Nelson and various business entities owned by Mr. Hardige. When the litigation was eventually settled, Nashville Residence Corporation ("Nashville Residence"), of which Mr. Nelson was the principal stockholder, received a tract of land at 2300 Elm Hill Pike in Nashville. In return, Nashville Residence and two sureties executed a $250,000 note to Orlando Residence, Ltd. ("Orlando Residence"), a limited partnership with Mr. Hardige as the general partner. (Footnote omitted). Thereafter Nashville Lodging Company ("Nashville Lodging"), a Tennessee-based limited partnership with Nashville Residence as its general partner, built a Marriott Hotel on the Elm Hill property.

Nashville Residence defaulted on the note to Orlando Residence. In December 1986, Orlando Residence sued Nashville Residence in the United States District Court for the Middle District of Tennessee. Shortly after Orlando Residence filed suit, Nashville Residence quitclaimed the Elm Hill property to Nashville Lodging. In 1989, Nashville Lodging sold the hotel and leased the property to Metric Partners Growth Suite Investors, L.P. ("Metric Partners"). In March 1990, Orlando Residence obtained a judgment in federal court against Nashville Residence for $250,000 plus interest.

Armed with its $250,000 judgment, Orlando Residence filed suit in the Chancery Court for Davidson County against Nashville Residence, Nashville Lodging, Mr. Nelson, and Metric Partners attacking the conveyance of the Elm Hill property as a fraudulent conveyance. Orlando Residence eventually succeeded with its claim and was awarded $501,934 in compensatory and $850,000 in punitive damages from Nashville Residence and Nashville Lodging. Both Nashville Residence and Nashville Lodging appealed to this court.

Orlando Residence decided to execute on its chancery court judgment while Nashville Residence's and Nashville Lodging's appeal was pending. In the summer of 1996, Orlando Residence moved to subject the Elm Hill property to an execution sale. Orlando Residence purchased the property for $100,000, and this sale was confirmed by the trial court. Three months later, this court reversed Orlando Residence's judgment and remanded the case for a new trial. *See Orlando Residence Ltd. v. Nashville Lodging Co.*, No. 01A01-9606-CH-00256, 1996 WL 724915, at *4-7 (Tenn. Ct. App. Dec. 18, 1996), *perm. app. denied concurring in results only* (Tenn. May 19, 1997).

With the fraudulent conveyance judgment now vacated, Nashville Lodging and Nashville Residence, not surprisingly, requested the trial court to set aside the execution sale of the Elm Hill property to Orlando Residence. They also requested

the trial court to dismiss the case because Orlando Residence lacked standing to enforce the federal court judgment. The trial court declined to dismiss Orlando Residence's fraudulent transfer suit or to set aside the judicial sale. After several additional skirmishes, Nashville Residence and Nashville Lodging again appealed to this court.

Nashville Lodging also decided to try another legal tack after the trial court denied its motion to set aside the judicial sale. It filed a new action in the Chancery Court for Davidson County claiming that Orlando Residence was being unjustly enriched as a result of its purchase of the Elm Hill property at the judicial sale. This case was assigned to the trial court where Orlando Residence's fraudulent conveyance claim was pending. Accordingly, Nashville Lodging asserted that it was entitled to return of the property and to restitution of all rents and profits received by Orlando Residence after the execution sale. (Footnote omitted). Orlando Residence swiftly moved to dismiss this lawsuit on res judicata grounds. On September 8, 1998, the trial court dismissed Nashville Lodging's complaint. Nashville Lodging Company perfected its second appeal to this court.

The dispute over the Elm Hill property took on a new dimension prior to the oral arguments in both appeals. Metric Partners defaulted on a promissory note it had signed as part of the 1989 conveyance of the property and purchase of the hotel. (Footnote omitted). The note was secured by a first mortgage on both the Elm Hill property and the hotel. Following the default, the holder of the note notified the parties that it intended to foreclose on and sell the Elm Hill property and the hotel. The foreclosure sale was conducted shortly after this court heard oral argument in the appeal involving Orlando Residence's fraudulent conveyance claim. WBL II Real Estate Limited Partnership purchased the Elm Hill property and the hotel for $9,050,000. The trustee of the deed of trust estimated that approximately $500,000 in excess proceeds would be distributed to the owner of the Elm Hill property after the existing indebtedness was satisfied.

The foreclosure sale ended any possibility that either Orlando Residence, Nashville Lodging, or Nashville Residence could recover possession of the Elm Hill property. Accordingly, following oral argument in its appeal from the trial court's dismissal of its unjust enrichment complaint against Orlando Residence, Nashville Lodging moved to dismiss its appeal from the dismissal of its unjust enrichment claim.

We dismissed the appeal because the question of whether Nashville Lodging could recover the property was moot. We now come to the proceedings between the second appeal to this court and the present appeal. On August 5, 1999 the defendants filed a Motion for Partial Summary Judgment Regarding Restitution. The defendants asked the trial court to make a decision on Orlando Residence's liability to make restitution of the value of the land that had been sold at the execution

-3-

sale. On August 6, 1999 they also filed a Motion for Partial Summary Judgment Regarding the Statute of Limitations. In this motion, the defendants argued that Orlando Residence's original fraudulent conveyance claim was barred by a three year statute of limitations. The trial court ruled on both these Motions for Partial Summary Judgment in an order filed October 6, 1999. The trial court ruled that the defendants did indeed deserve restitution, but reserved the issue of the amount of restitution, and also denied the motion regarding the statute of limitations.

The defendants then filed another motion regarding the amount of restitution on October 13, 1999. The trial court granted the motion in a Memorandum and Order filed December 9, 1999. In that order the trial court held that the amount of restitution due the defendants was $100,000, the successful bid at the execution sale.

The defendants renewed their Motion for Summary Judgment on the Statute of Limitations Defense. The trial court addressed this motion in a Memorandum and Order filed August 15, 2000. In this Memorandum and Order the trial court held that Orlando Residence's cause of action for damages did not accrue until the land was sold to Metric Partners on April 24, 1989, and that the lawsuit was filed within three years. Therefore, there was no issue as to the statute of limitations, and this issue was withdrawn from the jury.

The second trial was held from August 21 through August 25, 2000. The jury found that there had been a fraudulent conveyance. The jury awarded Orlando Residence compensatory damages in the amount of $797,615 but denied Orlando Residence's claim for punitive damages. In a judgment filed September 1, 2000, the trial court awarded compensatory damages to Orlando Residence in the amount of $797,615, and set restitution for the defendants in the amount of $137,671, $100,000 plus interest from the date of the original sale to Orlando Residence. The total restitution judgment amounted to $137,671.

## II.
### THE STATUTE OF LIMITATIONS

The statute of limitations defense first appeared in response to the complaint filed by Orlando Residence in October of 1992. In that complaint Orlando Residence sought (1) damages from Nashville Lodging, Nashville Residence, and Nelson and (2) an order setting aside the 1986 and 1989 conveyances as fraudulent. The only relief sought against Metric was a cancellation of the 1989 deed.

In separate answers, Nashville Residence, Nashville Lodging, and Nelson raised the statute of limitations as a defense. In reviewing the trial court's refusal to sustain the defense, this court held that the action to set aside the fraudulent conveyance was governed by the seven year statute of limitations contained in Tenn. Code Ann. § 28-2-103. Therefore the action filed in 1992 was timely whether the statute began to run in 1986 or 1989. On the other hand, this court held that the damage action against Nashville Lodging, Nashville Residence, and Nelson was subject to the three year statute of limitations contained in Tenn. Code Ann.§ 28-3-105. Since neither conveyance was

filed in the register's office until December 22, 1991 the court held that the statute began to run on that date "or such other date as plaintiff had actual or constructive notice of the conveyance." The record did not contain uncontradicted evidence of when the statute began to run so the court remanded the case for trial on that issue.

On August 6, 1999, Nashville Lodging Company again moved for summary judgment on its statute of limitations defense. The trial court initially denied the motion because there were material facts at issue. The "defendants" renewed their motion just before trial, but the trial court held that as a matter of law the statute of limitations did not begin to run until 1989 when the property was sold to Metric. The court reasoned:

> As to accrual of the plaintiff's damage claim, the Court holds that the plaintiff's damage claim in this case did not accrue when the allegedly fraudulent conveyance of the real property occurred in 1986 because no money changed hands at that time. The only damage at that time was the transfer of the property. Thus, the only remedy the transfer of the property was susceptible to in 1986 was rescission, not damages. As stated above, this Court has ruled that the rescission claim is dismissed as moot. It was in 1989 that the property was sold and money changed hands. The plaintiff's cause of action, then, for damages accrued when the property was sold on April 24, 1989, to Metric.

We think the court erred in holding that the cause of action for damages did not arise until the property was sold to Metric. "Where property has been fraudulently conveyed, the creditor may recover its value from the grantee who joined in the fraudulent conveyance." *Hartnett v. Doyle*, 64 S.W.2d 227, 231 (Tenn. Ct. App. 1932). "He is not required to look to the specific property transferred, but may recover its value." *Keller v. Fowler Bros. & Cox*, 256 S.W. 879, 881 (Tenn. 1923). If the creditor can sue the fraudulent grantee, it must follow that he can sue the fraudulent grantors and those who conspire with them to defeat the creditor's claims. In this case the fraudulent grantor was Nashville Residence and the fraudulent grantee was Nashville Lodging. Mr. Nelson was a limited partner in Nashville Lodging. The plaintiff has never sought damages from Metric. The judgment for damages in the first trial and in this trial runs against Nashville Lodging, Nashville Residence, and Nelson only.

In some cases, the claim against the fraudulent grantee may be asserted for a period of up to six years on an implied promise to pay for the property to prevent unjust enrichment. *See Bank v. Haller*, 101 Tenn. 83 (1898). In such cases, the creditor is said to have waived the tort and to have sued the purchaser for the value. *Colonial Milling Co. v. Holt Brothers*, 3 Tenn. App. 617 (1926). But that does not appear to have ever been the case here, and, in any event, it would not apply to Nashville Residence nor Nelson. Since the beginning this appears to have been an action against Metric to set aside the fraudulent conveyance and an action against Nashville Residence, Nelson, and Nashville Lodging for damages based on their fraudulent conduct. That was the basis for our decision in the first appeal, and it is, in our opinion, the law of the case. *See Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Bank Board*, 975 S.W.2d 303 (Tenn. 1998).

The defendants argue that the uncontradicted facts show that the plaintiff knew or should have known that the property had been conveyed more than three years before suit was filed. We do not agree. As we said nearly five and a half years ago "the running of the action for damages depends upon an issue of fact and is still a live issue to be decided by the trier of fact."

## III.

### WAS THE CONVEYANCE TO NASHVILLE LODGING FRAUDULENT?

The defendants assert that they were entitled to a directed verdict on the question of whether the conveyance to Nashville Lodging came within our fraudulent conveyance statutes. A conveyance may be fraudulent for two reasons: one made with actual intent to delay, hinder, or defraud creditors, Tenn. Code Ann. § 66-3-101, or one made without fair consideration if the grantor is insolvent or the conveyance renders him/her insolvent, Tenn. Code Ann. § 66-3-305.

The jury was asked to find whether the defendants intended to hinder, delay, or defraud Orlando Residence when they conveyed the property to Nashville Lodging, whether Nashville Lodging paid less than a fair consideration for the property, and whether Nashville Residence was insolvent or was rendered insolvent by the transfer. In each case the answer was a unanimous "yes." These findings are binding on us if there is any material evidence to support them. Tenn. R. App. P. 13(d). The court may grant a motion for a directed verdict, Tenn. R. Civ. P. 50.01, or a motion for judgment notwithstanding the verdict, Tenn. R. Civ. P. 50.02, "only if, after assessing the evidence . . . it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994).

The evidence in the record shows that estimates of the equity in the hotel at the time of the transfer to Nashville Lodging ran from $517,000 to $4.5 million. Nashville Residence did not receive any consideration for the transfer, and after the transfer, Nashville Residence had no other assets with which to pay the $250,000 judgment held by Orlando Residence. We think the jury easily could have found evidence to satisfy the requirements of Tenn. Code Ann. § 66-3-305.

The evidence also showed that just five days after Orlando Residence received its judgment defendant Nelson began to transfer assets out of Nashville Residence to a newly-formed limited partnership composed of the same individuals involved in Nashville Residence. The transfers were accomplished in secret and were marked with numerous other badges of fraud. *See* William H. Inman, *Gibson's Suits in Chancery*, § 447 (7th ed. 1988). We are satisfied that the jury properly assessed the evidence that satisfies Tenn. Code Ann. § 66-3-101.

# IV.
## WAS $100,000 THE RIGHT RESTITUTION AMOUNT?

The trial court held that as a matter of law the amount of Nashville Lodging's restitution claim was limited to $100,000, the amount Orlando Residence bid at the execution sale. On appeal, Nashville Lodging claims that it is entitled to the "value" of the hotel at the date of the sale.

As we have noted, after obtaining the original judgment in the lower court, for which the defendants could not obtain a stay on appeal, Orlando Residence forced a sale of the hotel on July 24, 1996, to satisfy its judgment lien. Apparently the bidding at the sale was spirited, but the lower court found that the highest legitimate bid was $100,000, the bid made by Orlando Residence. The property was subject to a $8,776,951 first mortgage. The court confirmed the sale on September 3, 1996 allowing a $100,000 credit to Nashville Residence on Orlando Residence's judgment.

It seems to us that the resolution of this issue depends on the action of the trial court when it originally confirmed the sale to Orlando Residence for $100,000. Despite Nashville Residence's claims that the property was worth much more than that, that is what it brought at the sale, and in this state we give conclusive effect to the sale price, absent "some evidence of irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee . . . ." *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984); *see also Duke v. Daniels*, 660 S.W.2d 793 (Tenn. Ct. App. 1983). Even where the sale price is shockingly disproportionate to the actual value of the property the court will not set the sale aside. *Holt*, 688 S.W.2d at 416.

If the value of what was taken from the defendants at the sale pursuant to the erroneous judgment was $100,000, that is all the defendants can claim in the way of restitution. The lower courts gave them that credit plus interest from the date of the sale. Therefore, even if we follow the *Restatement (Second) of Contracts* § 371 (1981)(which allows a party to recover the reasonable value of what the other party received or the extent to which the other party's property has been increased in value) the result is the same: the value is conclusively presumed to be what the property brought at the sale.

Shortly before oral argument in this case, Orlando Residence filed a Motion to Substitute GP Credit Co., LLC for Nashville Lodging as an appellant in this case. After considering the motion, we have decided to deny it.

We reverse the lower court's holding that as a matter of law the statute of limitations did not begin to run until 1989 and we remand the cause for a trial on that issue alone. In all other respects the court's judgment is affirmed. Tax the costs on appeal equally to the appellants and the appellee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.