# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 28, 2011 Session

## ORLANDO RESIDENCE, LTD. v. NASHVILLE LODGING COMPANY, NASHVILLE RESIDENCE CORP., AND KENNETH E. NELSON

### Direct Appeal from the Chancery Court for Davidson County
#### No. 92-3086-III      Ellen Hobbs Lyle, Chancellor

---

### No. M2011-00911-COA-R3-CV - Filed December 9, 2011

---

This appeal centers on the effective date of a judgment against Appellant–2000 or 2004. Appellant argues that both the equitable estoppel and law of the case doctrines bar Plaintiff from arguing that the judgment was entered in 2004, and therefore, that it has not expired. The trial court found that the judgment had not expired, and we affirm.


**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Kenneth E. Nelson, Cary, North Carolina, *pro se*

Eugene N. Bulso, Jr., Steven A. Nieters, Nashville, Tennessee, for the appellee, Orlando Residence, Ltd.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

This is the fifth time this Court has addressed the merits of this case on appeal. The facts of the case have not changed, and therefore, we adopt the factual background and procedural history as previously set forth:

"The seeds of the present dispute were sown in 1981 when Samuel H. Hardige hired Kenneth E. Nelson to oversee one of his businesses. Mr. Hardige fired Mr. Nelson a short time later, thereby precipitating considerable litigation between Mr. Nelson and various business entities owned by Mr. Hardige. When the litigation was eventually settled, Nashville Residence Corporation ("Nashville Residence"), of which Mr. Nelson was the principal stockholder, received a tract of land at 2300 Elm Hill Pike in Nashville. In return, Nashville Residence and two sureties executed a $250,000 note to Orlando Residence, Ltd. ("Orlando Residence"), a limited partnership with Mr. Hardige as the general partner. (Footnote omitted). Thereafter Nashville Lodging Company ("Nashville Lodging"), a Tennessee-based limited partnership with Nashville Residence as its general partner, built a Marriott Hotel on the Elm Hill property.

Nashville Residence defaulted on the note to Orlando Residence. In December 1986, Orlando Residence sued Nashville Residence in the United States District Court for the Middle District of Tennessee. Shortly after Orlando Residence filed suit, Nashville Residence quitclaimed the Elm Hill property to Nashville Lodging. In 1989, Nashville Lodging sold the hotel and leased the property to Metric Partners Growth Suite Investors, L.P. ("Metric Partners"). In March 1990, Orlando Residence obtained a judgment in federal court against Nashville Residence for $250,000 plus interest.

Armed with its $250,000 judgment, Orlando Residence filed suit in the Chancery Court for Davidson County against Nashville Residence, Nashville Lodging, Mr. Nelson, and Metric Partners attacking the conveyance of the Elm Hill property as a fraudulent conveyance. Orlando Residence eventually succeeded with its claim and was awarded $501,934 in compensatory and $850,000 in punitive damages from [Mr. Nelson,] Nashville Residence and Nashville Lodging. [Mr. Nelson,] Nashville Residence and Nashville Lodging appealed to this court.

Orlando Residence decided to execute on its chancery court judgment while [Mr. Nelson's,] Nashville Residence's and Nashville Lodging's appeal was pending. In the summer of 1996, Orlando Residence moved to subject the Elm Hill property to an execution sale. Orlando Residence purchased the property for $100,000, and this sale was confirmed by the trial court. Three months later, this court reversed Orlando Residence's judgment and remanded the case for a new trial. *See Orlando Residence Ltd. v. Nashville Lodging Co.,* No. 01A01–9606–CH–00256, 1996 WL 724915, at *4–7 (Tenn. Ct. App. Dec.18, 1996), *perm. app. denied concurring in results only* (Tenn. May 19, 1997).

With the fraudulent conveyance judgment now vacated, Nashville Lodging and Nashville Residence, not surprisingly, requested the trial court to set aside the execution sale of the Elm Hill property to Orlando Residence. They also requested the trial court to dismiss the case because Orlando Residence lacked standing to enforce the federal court judgment. The trial court declined to dismiss Orlando Residence's fraudulent transfer suit or to set aside the judicial sale. After several additional skirmishes, Nashville Residence and Nashville Lodging again appealed to this court.

Nashville Lodging also decided to try another legal tack after the trial court denied its motion to set aside the judicial sale. It filed a new action in the Chancery Court for Davidson County claiming that Orlando Residence was being unjustly enriched as a result of its purchase of the Elm Hill property at the judicial sale. This case was assigned to the trial court where Orlando Residence's fraudulent conveyance claim was pending. Accordingly, Nashville Lodging asserted that it was entitled to return of the property and to restitution of all rents and profits received by Orlando Residence after the execution sale. (Footnote omitted). Orlando Residence swiftly moved to dismiss this lawsuit on res judicata grounds. On September 8, 1998, the trial court dismissed Nashville Lodging's complaint. Nashville Lodging Company perfected its second appeal to this court.

The dispute over the Elm Hill property took on a new dimension prior to the oral arguments in both appeals. Metric Partners defaulted on a promissory note it had signed as part of the 1989 conveyance of the property and purchase of the hotel. (Footnote omitted). The note was secured by a first mortgage on both the Elm Hill property and the hotel. Following the default, the holder of the note notified the parties that it intended to foreclose on and

sell the Elm Hill property and the hotel. The foreclosure sale was conducted shortly after this court heard oral argument in the appeal involving Orlando Residence's fraudulent conveyance claim. WBL II Real Estate Limited Partnership purchased the Elm Hill property and the hotel for $9,050,000. The trustee of the deed of trust estimated that approximately $500,000 in excess proceeds would be distributed to the owner of the Elm Hill property after the existing indebtedness was satisfied.

The foreclosure sale ended any possibility that either Orlando Residence, Nashville Lodging, or Nashville Residence could recover possession of the Elm Hill property. Accordingly, following oral argument in its appeal from the trial court's dismissal of its unjust enrichment complaint against Orlando Residence, Nashville Lodging moved to dismiss its appeal from the dismissal of its unjust enrichment claim.

We dismissed the appeal because the question of whether Nashville Lodging could recover the property was moot. . . . On August 5, 1999 [,] the defendants filed a Motion for Partial Summary Judgment Regarding Restitution. The defendants asked the trial court to make a decision on Orlando Residence's liability to make restitution of the value of the land that had been sold at the execution sale. On August 6, 1999[,] they also filed a Motion for Partial Summary Judgment Regarding the Statute of Limitations. In this motion, the defendants argued that Orlando Residence's original fraudulent conveyance claim was barred by a three year statute of limitations. The trial court ruled on both these Motions for Partial Summary Judgment in an order filed October 6, 1999. The trial court ruled that the defendants did indeed deserve restitution, but reserved the issue of the amount of restitution, and also denied the motion regarding the statute of limitations.

The defendants then filed another motion regarding the amount of restitution on October 13, 1999. The trial court granted the motion in a Memorandum and Order filed December 9, 1999. In that order the trial court held that the amount of restitution due the defendants was $100,000, the successful bid at the execution sale.

The defendants renewed their Motion for Summary Judgment on the Statute of Limitations Defense. The trial court addressed this motion in a Memorandum and Order filed August 15, 2000. In this Memorandum and Order the trial court held that Orlando Residence's cause of action for damages

did not accrue until the land was sold to Metric Partners on April 24, 1989, and that the lawsuit was filed within three years. Therefore, there was no issue as to the statute of limitations, and this issue was withdrawn from the jury.

The second trial was held from August 21 through August 25, 2000. The jury found that there had been a fraudulent conveyance. The jury awarded Orlando Residence compensatory damages in the amount of $797,615 [against Mr. Nelson, Nashville Residence, and Nashville Lodging,] but denied Orlando Residence's claim for punitive damages. In a judgment filed September [25], 2000,[1] the trial court awarded compensatory damages to Orlando Residence in the amount of $797,615, and set restitution for [Nashville Lodging] in the amount of $137,671, $100,000 plus interest from the date of the original sale to Orlando Residence. The total restitution judgment amounted to $137,671."

*Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 857-859 (Tenn. Ct. App. 2006) ("*Orlando 4*")(quoting *Orlando Residence Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, 850-53 (Tenn. Ct. App. 2002) ("*Orlando 3*"); (citing *Orlando Residence Ltd. v. Nashville Lodging Co.*, No. 01A01-01-9606-CH-00256, 1996 WL 724915, at *1-2 (Tenn. Ct. App. Dec. 18, 1996) ("*Orlando 1*") *perm. app. denied concurring in results only* (Tenn. May 19, 1997).

In the third appeal, this Court affirmed the jury's verdict finding that Nashville Residence and Mr. Nelson acted fraudulently in transferring the property to Nashville Lodging, and thus rejected claims by Nashville Residence, Nashville Lodging, and Mr. Nelson that they were entitled to a directed verdict in their favor on this issue. [*Orlando 3*, 104 S.W.3d] at 854. This Court also held that the $100,000 price obtained at the execution sale of the Inn set the value of the Inn, for restitution purposes, as a matter of law. *Id.* at 855. However, in relation to the statute of limitations, this Court held that the trial court erred in finding that Orlando Residence's cause of action for damages against Nashville Residence, Nashville Lodging, and Mr. Nelson arose in 1989 when Nashville Lodging conveyed the Inn to Metric. *Id.* at 853–5[4]. Rather, this Court held that the cause of action accrued when Appellee knew or should have known that the Inn had initially been conveyed from Nashville Residence to Nashville Lodging. *Id.* at 854. Since the issue of when Orlando Residence knew or should have known of the conveyance constituted a factual issue to be decided by the trier of fact, this Court

---

[1] It appears that this Judgment was received on September 1, 2000 and filed on September 25, 2000.

remanded this case to the trial court for determination of that issue *alone*. *Id.* at 854–55.

Prior to the trial on the statute of limitations, both sides filed a plethora of motions . . . . Nashville Residence, Nashville Lodging, and Mr. Nelson moved to have all issues tried by a single jury. The trial court denied this motion. Nashville Residence, Nashville Lodging, and Mr. Nelson subsequently moved for summary judgment on the issue of statute of limitations and further filed a motion to dismiss Orlando Residence's case for lack of subject matter jurisdiction arguing that Orlando Residence lacked standing to pursue this case. The trial court denied both motions.

*Orlando 4*, 213 S.W.3d at 859-61 (footnotes omitted).

Following the remand to the trial court concerning the statute of limitations, but prior to the trial regarding such, Mr. Nelson's alter ego, GP Credit Co., LLC,[2] successfully argued to the United States Court of Appeals for the Seventh Circuit that Orlando Residence had no judgment lien because, it found, "[t]he trial court's judgment having been reversed, there is no judgment." *GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976, 981-82 (7th Cir. (Wis.) 2003). The Court further stated that "[t]he entry of a judgment in Orlando[ Residence's] favor depends on a favorable outcome of the yet to be scheduled trial on [Nashville Lodging Company's] statute of limitations defense. Orlando has at most the probabilistic expectation of obtaining a favorable judgment eventually, and such an expectation is not a judgment and does not create a lien." *Id.* at 982.

[Subsequently, t]he trial for the statute of limitations was held September 27–30, 2004. . . . During this trial, Mr. Nelson failed to personally appear and, as a result, Appellee moved to dismiss Mr. Nelson's statute of limitations affirmative defense. The trial court granted this motion. In so granting, the trial court held as follows:

The authoritative premise for the dismissal is the broad, common-law authority of trial courts to control their dockets and the proceedings, including the express authority to dismiss cases for failure to prosecute. *Hodges v. Tennessee Attorney Gen.,* 43 S.W.3d 918 (Tenn. Ct. App. 2000). The factual premise for the

---

[2] *See Orlando Residence, Ltd. v. GP Credit Co., LLC*, 553 F.3d 550, 555 (7th Cir. 2009).

dismissal is unfair prejudice to the plaintiff. There was no indication to the Court or plaintiff's counsel, prior to the clerk calling the case for trial, that defendant Nelson had decided not to appear. All indications prior to the case being called were that Mr. Nelson would be present in person to prosecute his affirmative defense. The surprise to the plaintiff as well as the failure of Mr. Nelson to appear are particularly prejudicial to the plaintiff in this case because, in defending against the asserted bar of the statute of limitations, the plaintiff's defense incorporates challenging defendant Nelson's credibility and questioning defendant Nelson about his obstruction of the plaintiff in gaining knowledge that it had been injured. Thus, the Court concludes that it would not be fair to allow counsel for Mr. Nelson to prosecute Mr. Nelson's affirmative defense in Mr. Nelson's absence.

It is therefore ORDERED that defendant Kenneth E. Nelson's affirmative defense of the statute of limitations is dismissed with prejudice.

At the conclusion of the trial, the jury found that Orlando Residence's action was brought within the applicable statute of limitations.[3] Prior to trial, Appellee had moved for setoff of the $137,671 restitution judgment against it in favor of Nashville Lodging. The trial court granted Appellee's request and, thus, the $137,671 restitution judgment in favor of Nashville Lodging was set off against Appellee's federal court judgment in the amount of $1,023,838.

*Orlando 4*, 213 S.W.3d at 860-61 (footnote omitted). The trial court issued an Order on October 7, 2004 stating that "The Judgment filed September 25, 2000, in favor of the plaintiff, Orlando Residence, Ltd., against defendants Nashville Lodging Company, Nashville Residence Corporation, and Kenneth E. Nelson, is now subject to execution in accordance with Tenn. R. Civ. P. 62." "After being denied relief in their subsequent post-trial motions, Nashville Residence, Nashville Lodging, and Mr. Nelson all filed notices of appeal, thus bringing this case before this Court for a fourth time.[4] *Id.* at 861 (footnote omitted).

---

[3]It is unclear why the jury considered the statute of limitations issue when the affirmative defense had been previously dismissed by the trial court. In any event, Orlando Residence's action was considered timely.

[4]Nashville Residence and Nashville Lodging were dismissed as parties to the appeal. *Orlando 4*, 213 S.W.3d at 861 n.2.

In the fourth appeal, Mr. Nelson contended, among other things, that the trial court erred in dismissing his statute of limitations defense due to his failure to personally appear at trial. *Id.* at 864. Noting both the trial court's finding of prejudice to Orlando Residence and Mr. Nelson's failure to file either a transcript of the hearing or a statement of the evidence, we affirmed the trial court's dismissal. *Id.* at 865.

Following entry of the 2004 trial court order, Orlando Residence commenced execution of its Judgment in the Davidson County Chancery Court when it moved to subject the proceeds of a cash bond held by the Davidson County Clerk and Master. The cash bond proceeds were awarded to Orlando Residence on July 13, 2005. Orlando Residence then domesticated its judgment against Mr. Nelson in Wisconsin, where he allegedly had "substantial assets." A Wisconsin trial court rejected Mr. Nelson's claims that these assets belonged to others and it determined that the amount owed on the judgment *as of October 20, 2008*, including interest, was $1,218,512.40. ***Orlando Residence v. Nelson***, 323 Wis.2d 277, 2009 WL 5126598, at *1 (Wis. App. Dec. 30, 2009) (**V1, 28**). The Wisconsin Court of Appeals affirmed the interest calculation based upon Mr. Nelson's stipulation to the calculation at trial, and the Wisconsin Supreme Court denied review. *Id.* at *2.

Following entry of the Wisconsin trial court order, Orlando Residence recovered $1,031,311.98 in cash in April and May of 2010, partially satisfying the judgment against Mr. Nelson. Additionally, on September 9, 2010, Mr. Nelson's former residence and a separate parcel of property were sold at a Wisconsin sheriff's sale for $275,000. Orlando Residence then domesticated its judgment in North Carolina where Mr. Nelson had allegedly established a new residence and it also filed another motion in Wisconsin to apply property to its judgment. Mr. Nelson opposed these execution attempts by arguing, among other things, that Orlando Residence's Tennessee judgment had been satisfied,[5] or alternatively, that it had expired ten years after its entry in 2000.

On March 22, 2011, Orlando Residence filed a motion in the Davidson County Chancery Court requesting that the court set the proper rate of post-judgment interest for the period *after October 20, 2008*. Mr. Nelson responded by arguing that Orlando Residence had conceded the appropriate interest rate–10 percent simple interest–and therefore, that no justiciable issue existed. He also, again, argued that the judgment against him had expired and that Orlando Residence should be judicially estopped from arguing to the contrary.

_____

[5]Mr. Nelson's satisfaction argument was based upon his claim that the post-judgment interest rate is 10% *simple* interest, as opposed to *compound* interest. In a May 16, 2011 order, the General Court of Justice, Superior Court Division, Wake County, North Carolina, noted that Mr. Nelson had withdrawn his earlier defense regarding satisfaction of the judgment. Similarly, we note that Mr. Nelson does not argue on appeal that the judgment has been satisfied.

On April 12, 2011, the Davidson County Chancery Court issued its "Memorandum and Order" in which it determined that a justiciable controversy existed and that it was a proper court in which to decide the issues raised. The court dismissed Mr. Nelson's argument that the judgment against him had expired, adopting the analysis set forth in Orlando Residence's memorandum, as follows:

> As this Court is well aware, a Tennessee judgment is valid for ten (10) years, and may be renewed thereafter for successive ten-year periods. *See, e.g.,* Tenn. R. Civ. P. 69.04. [Orlando Residence] has had a final judgment against Nelson only since October 7, 2004. [] Its Judgment is therefore only six and one-half years old.

> Despite this fact, Nelson has now begun to take the position that [Orlando Residence's] Judgment has expired. According to Nelson, [Orlando Residence] received a final judgment on September 25, 2000, and the Judgment therefore expired on September 25, 2010. [] This argument simply ignores the fact that the Judgment filed September 25, 2000, was reversed by the Tennessee Court of Appeals on May 21, 2002, on the basis that this Court should have submitted the issue of the statute of limitations to the jury. *See Orlando [3],* 104 S.W.3d 848. Once the Court of Appeals reversed [Orlando Residence's] Judgment, it was no longer a final judgment subject to execution.

> . . . .

> Because the Tennessee Court of Appeals vacated the Judgment filed September 25, 2000, [Orlando Residence] did not obtain a final judgment in this case until a final judgment was entered on October 7, 2004. [] Accordingly, [Orlando Residence's] Judgment has not expired and continues to accrue interest.

Finally, the trial court determined that the effective post-judgment interest rate is 10%, compounded annually. It is from this order that the current appeal arises.[6]

---

[6]On May 16, 2011, the General Court of Justice, Superior Court Division, Wake County, North Carolina issued an order finding that the judgment against Mr. Nelson became final on October 7, 2004, and therefore, that North Carolina's ten-year statute of limitations did not bar enforcement of the judgment. Similarly, on June 26, 2011, the Ozaukee County, Wisconsin, Circuit Court issued an order finding that the "Tennessee judgment dates back to October 7, 2004." However, the court noted that under Wisconsin law, the judgment remained enforceable even if it was entered in 2000.

## II.   ISSUES PRESENTED

Mr. Nelson presents the following issues for review:

1.   Were the issues addressed by the trial court in its order dated April 12, 2011, justiciable?
2.   Did the trial court have subject-matter jurisdiction?
3.   Does the law-of-the-case doctrine bar Orlando Residence from arguing against this Court's earlier holding that Orlando Residence's judgment was entered in 2000; and
4.   Does judicial estoppel bar Orlando Residence from arguing it holds a 2004 judgment rather than a 2000 judgment?

For the following reasons, we affirm the decision of the chancery court.


## III.   DISCUSSION

### *A.  Justiciability*

At the outset, we consider Mr. Nelson's argument regarding "justiciability."  Mr. Nelson claims that the issues of the proper post-judgment interest rate and the judgment's effective date were "pending before the Wisconsin court[,]" and, therefore, that "the trial court was obligated to decline to act."

"Tennessee courts have, since the earliest days of statehood, recognized and followed self-imposed rules to promote judicial restraint and to provide certain criteria for determining whether the courts should hear and decide a particular case." ***Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County***, 301 S.W.3d 196, 203 (Tenn. 2009). "Tennessee's courts believed that 'the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions.'" ***Id.*** (quoting *State v. Wilson*, 70 Tenn. 204, 210 (1879)).  Thus, the courts "limited their role to deciding 'legal controversies.'" ***Id.*** (citing *White v. Kelton*, 232 S.W. 668, 670 (Tenn. 1921)).  "A proceeding qualifies as a 'legal controversy' when the disputed issue is real and existing, and when the dispute is between parties with real and adverse interests." ***Id.*** (citing *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 512 (Tenn. 1974)) (internal citations omitted).

Again, Mr. Nelson argues that because the issues of interest calculation and judgment expiration had been submitted to a Wisconsin court, no justiciable issues were before the chancery court.  Mr. Nelson's "justiciability" argument is, in fact, a flawed attempt to invoke the doctrine of prior suit pending, which is inapplicable in this case.  Under the doctrine,

"where two courts have concurrent jurisdiction over a matter, the first of those courts to acquire jurisdiction takes exclusive jurisdiction over it." *Estate of McFerren v. Infinity Transport, LLC*, 197 S.W.3d 743, 746 (Tenn. Workers Comp. Panel 2006). "Any subsequent actions must, therefore, be dismissed." *Id.* However, three conditions must be met in order to invoke the doctrine: "(1) The two cases must involve identical subject matter, and (2) The suits must be between the same parties, and (3) The former suit must be pending in a court of this state having jurisdiction over both the subject matter and the parties." *Id.* Despite Mr. Nelson's arguments to the contrary, it is clear that the Wisconsin action does not invoke the prior suit pending doctrine in this case. Moreover, insofar as Mr. Nelson's arguments actually relate to "justiciability," we find that the dispute between the parties as to the appropriate post-judgment interest rate and to the judgment's effective date presents a "legal controversy," and, therefore, that the decision rendered by the trial court was not merely advisory.

### B. Subject-Matter Jurisdiction

"'The concept of subject matter jurisdiction implicates a court's authority to hear and decide a particular type of case.'" *State ex rel. Whitley v. Lewis*, 244 S.W.3d 824, 830 (Tenn. Ct. App. 2007) (quoting *White v. State ex rel. Armstrong*, No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *2 (Tenn. Ct. App. Feb.16, 2001)). "A court must have subject matter jurisdiction over a matter for the matter to be adjudicated." *Tenn. Envtl. Council v. Water Quality Control Bd.*, 250 S.W.3d 44, 55 (Tenn. Ct. App. 2007) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997)). In the absence of subject matter jurisdiction, a court's order is not valid or enforceable. *Whitley*, 244 S.W.3d at 830.

Tennessee courts derive their subject matter jurisdiction from the state constitution or from legislative acts. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Whether subject matter jurisdiction exists in a particular case depends upon the nature of the cause of action and the relief sought. *Benson v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007) (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Therefore, when a court's subject matter jurisdiction is challenged, the first step is to ascertain the gravamen or nature of the case, and then we must determine whether the Tennessee Constitution or the General Assembly has conferred on the court the power to adjudicate cases of that sort. *Id.* "Courts may not exercise jurisdictional powers that have not been conferred on them directly or by necessary implication." *Osborn*, 127 S.W.3d at 739 (citing *First Am. Trust Co. v. Franklin–Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). "'[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment

and dismiss the case without reaching the merits of the appeal.'" *Id.* at 741 (quoting *Dishmon*, 15 S.W.3d at 480). The determination of whether subject matter jurisdiction exists is a question of law, and therefore, our review is de novo, without a presumption of correctness. ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000) (citing *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999)).

In the case before us, Mr. Nelson argues that the chancery court lacked subject-matter jurisdiction to consider Orlando Residence's March 2011 motion because "no rule or statute" gave the court "jurisdiction . . . , years after entry of a judgment, to either set the interest rate on a judgment or to modify the date as of which a judgment was entered." We disagree. Both the initial September 25, 2000 Judgment and the October 7, 2004 Order subjecting the September 25, 2000 Judgment to execution were issued by the Davidson County Chancery Court. "'The power to enforce its judgments is inherent in all courts, since without this power the courts themselves would be unable to effect the ends for which they were designed.'" ***State ex rel. Stall v. City of Knoxville***, 365 S.W.2d 433, 435 (Tenn. 1963) (quoting *State ex rel. Conner v. Hebert*, 154 S.W. 957, 962 (Tenn. 1913)); *see also Ali v. Fisher*, 145 S.W.3d 557, 565 (Tenn. 2004) (remanding to the trial court to address post-judgment interest, noting that "a plaintiff is not required to move for an award of post-judgment interest in the trial court as the issue does not become ripe until the conclusion of the appellate process."). We find that the chancery court's jurisdiction to act "with regard to ancillary matters relating to the enforcement or collection of its judgment[,]" *see First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141, n.8 (Tenn. Ct. App. 2001), properly included, in this case, the authority to set the appropriate interest rate and to clarify the judgment's effective date.

## C.   Law-of-the-Case Doctrine

Having determined that a justiciable issue exists and that the chancery court properly exercised its subject-matter jurisdiction, we now turn to the merits of the case. The central dispute concerns the effective date of the judgment in favor of Orlando Residence–2000 or 2004–for determining whether the judgment has expired. As discussed above, Orlando Residence contends, and the trial court agreed, that when this Court remanded for submission of the statute of limitations issue to the jury, the September 2000 judgment was vacated, and therefore, it was no longer a final judgment subject to execution. Only after the statute of limitations issue was resolved, and an order of October 7, 2004 entered subjecting the September 2000 judgment to execution, did the judgment against Mr. Nelson become final and the ten-year period for acting on the judgment begin to run. *See* **Tenn. Code Ann. § 28-3-110(2)**. However, Mr. Nelson argues that the September 2000 order remained in effect, and therefore that the judgment expired on September 25, 2010. He maintains that "[i]t is

the law of the case that [Orlando Residence] obtained a judgment in 2000."

Orlando Residence argues that Mr. Nelson did not raise the "law of the case" issue in the trial court, and therefore, that the issue is waived on appeal. Mr. Nelson, however, claims that this issue was raised in the trial court, and he points to the following language included in his response to Orlando Residence's motion to set the post-judgment interest rate:

> In an attempt to argue judicial estoppel as to the date of the judgment, [Orlando Residence] claims Nelson previously argued, successfully, in federal court that the 2000 judgment was vacated when the Court of Appeals reversed this Court's decision. However in 2004, [Orlando Residence] submitted to this Court, an order that "the Judgment filed on September 25, 2000 . . . is now subject to execution in accordance with Tenn. R. Civ. P. 62." The Court executed that order. . . . [Orlando Residence] is barred by the law of the case and equitable estoppel from changing its position now and attempting to argue that it is attempting to enforce a different judgment entered at some other time.

We acknowledge that the "law of the case" argued in the trial court by Mr. Nelson–Orlando Residence's submitted order–is not the "law of the case" asserted on appeal–the *Orlando 4* decision. However, bearing in mind Mr. Nelson's pro se status, we find it appropriate to indulge his argument.

The "law of the case" doctrine "generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." ***Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.***, 975 S.W.2d 303, 306 (Tenn. 1998) (citing 5 Am. Jur.2d *Appellate Review* § 605 (1995)). "[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts of the second trial or appeal are substantially the same as the facts in the first trial or appeal." ***Id.*** (citing *Life & Casualty Ins. Co. v. Jett*, 133 S.W.2d 997, 998-99 (Tenn. 1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996)). The doctrine's purpose is to "promote[] the finality and efficiency of the judicial process, [to] avoid[] indefinite relitigation of the same issue, [to] foster[] consistent results in the same litigation, and [to] assure[] the obedience of lower courts to the decisions of appellate courts." ***Id.*** (citations omitted). The doctrine applies both to issues actually decided and issues necessarily decided by implication, but it does not apply to dicta. ***Id.*** (citing *Ladd*, 939 S.W.2d at 90; *Ridley v. Haiman*, 47 S.W.2d 750, 752-53 (Tenn. 1932)).

As support for his argument that the 2000 judgment remained in effect, Mr. Nelson relies upon language in our 2006 *Orlando 4* opinion in which we stated that "this Court has previously affirmed the 2000 judgment in *Orlando 3*." ***Orlando 4***, 213 S.W.3d at 855 (citing

-13-

*Orlando 3*, 104 S.W.3d at 854).  Our statement can be more fully understood by reviewing the surrounding discussion:

> [In *Orlando 3*], this Court specifically remanded the case for the purpose of determining the sole issue when the statute of limitations began to run.  All other respects of the trial court's judgment were affirmed.
>
> . . . .
>
> [R]egarding Mr. Nelson's claim that the judgment is void because it is outside the pleadings, it appears to this Court that Mr. Nelson is attempting to overturn the judgment rendered by the trial court on August 25, 2000, adjudicating Nashville Lodging, Nashville Residence, and Mr. Nelson liable for engaging in fraudulent transfer.  Once again, Mr. Nelson's argument comes too late since this Court has previously affirmed the 2000 judgment in *Orlando 3*.  Having already addressed arguments related to the merits of the trial court's judgment regarding the fraudulent transfer, we will not do so again.

*Id.* (internal citations omitted).  First, we note that our statement regarding affirmance apparently relates to an August 25, 2000 judgment which is not included in the record, rather than to the September 25, 2000 judgment at issue.  However, even if we assume that the statement somehow applies to the judgment at issue in this appeal,[7] our statement cannot be construed as an affirmance of the September 2000 judgment *in toto*, as Mr. Nelson contends.  Instead, reviewing our discussion as a whole, it is clear that the affirmance language simply explained that the fraudulent transfer issue could not be re-opened as *that portion* of the September 2000 judgment had been affirmed, *subject to the outcome-determinative statute of limitations issue on remand.*  Simply put, there is no law of the case that the September 2000 judgment remained effective following *Orlando 3*. This issue is without merit.

### D.  Estoppel

Finally, Mr. Nelson argues that Orlando Residence is estopped from asserting that the judgment became final in 2004 rather than in 2000.  In his initial brief to this Court, Mr. Nelson argued that Orlando Residence was both *judicially* and *equitably* estopped; however, in his reply brief, he concedes that judicial estoppel is inapplicable in this case.

Orlando Residence contends that Mr. Nelson failed to raise the issue of equitable

---

[7]The September 25, 2000 Judgment notes that the jury verdict was announced on August 25, 2000.

estoppel in the trial court, and therefore, that the issue is waived on appeal. Mr. Nelson did include the term "equitable estoppel" in his response to Orlando Residence's motion to set post-judgment interest, but he did not discuss the doctrine or set forth its requirements. Arguably, the "equitable estoppel" term was erroneously used, as it appears in his "judicial estoppel" section of argument. However, based on Mr. Nelson's pro se status, and his ostensible attempt to raise the issue in the trial court, we will consider the merits of this issue on appeal.

The elements of equitable estoppel have been clearly set forth:

The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially[.]

*Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990) (quoting *Callahan v. Town of Middleton*, 292 S.W.2d 501 (Tenn. 1954)).

Mr. Nelson maintains that "for years" Orlando Residence attempted to collect on the 2000 judgment, representing that it "was a final judgment on which it was entitled to collect." This representation was made, according to Mr. Nelson, to cause him to "not object to post-judgment interest commencing in 2000." In reliance upon this representation, he allowed interest to be calculated from 2000, resulting in a loss of "tens of thousands of dollars[.]"

However, as Orlando Residence correctly points out, the procedural history of this case–the remand for consideration of the statute of limitations issue and the subsequent entry of a 2004 order subjecting the 2000 judgment to execution–is a matter of public record. In fact, Mr. Nelson's own actions confirm that he was aware of the case history. As previously explained, Mr. Nelson, through his alter ego, successfully argued to the Seventh Circuit, in his brief to that Court, that "[in *Orlando 3*, the Tennessee Court of Appeals reversed [Orlando Residence's] judgment . . . . When [Orlando Residence's] judgment was reversed

and became unenforceable, any existing lien arising out of the judgment was extinguished." Based on the absence of a false representation or concealment by Orlando Residence as well as Mr. Nelson's knowledge of the truth as to the facts in question, we find that an equitable estoppel claim cannot be maintained. *Consumer Credit Union*, 801 S.W.2d at 825 (quoting *Callahan*, 292 S.W.2d 501). This issue is without merit.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Kenneth E. Nelson, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.