# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 1, 2012 Session

## STATE OF TENNESSEE, EX REL. REBECCA ESTES V. MICHAEL ESTES

### Appeal from the General Sessions Court for Blount County
### No. S-12239    Hon. Robert L. Headrick, Judge

___

### No. E2011-01067-COA-R3-CV-FILED-MARCH 13, 2012

___

This is a post-divorce child support case in which Michael Estes filed a petition to modify his child support obligation. The State of Tennessee is providing child support enforcement services to Rebecca Estes pursuant to Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq., and Tennessee Code Annotated section 71-3-124(c). The court modified the child support obligation pursuant to a child support worksheet but held Michael Estes in civil contempt for failure to pay support prior to filing the petition for modification. Father appeals. The judgment of the trial court is affirmed in part and reversed in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Reversed in Part; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

F.D. Gibson, III, Maryville, Tennessee, for the appellant, Michael Estes.

Robert E. Cooper, Jr., Attorney General and Reporter, and Marcie E. Greene, Assistant Attorney General, General Civil Division, Nashville, Tennessee, for the appellee, State of Tennessee, ex rel. Rebecca Estes.

### OPINION

### I. BACKGROUND

Michael Estes ("Father") and Rebecca Estes ("Mother") resided in Blounty County and were divorced on July 13, 2006, after approximately 16 years of marriage. They had two

children, Jared and Jordan (collectively the "Children"), who were both minors at the time of the divorce. Jared was born on November 2, 1990, and Jordan was born on June 7, 1992. Pursuant to the Marital Dissolution Agreement, Mother was designated as the primary residential parent of the Children. Father was given reasonable visitation and pursuant to an agreement, was tasked with remitting child support for the Children in the amount of $113.76 per week. At the time of the divorce, Father had amassed a child support arrearage of $1,000. In addition to the weekly child support payments, the trial court directed Father to pay Mother $7 per week toward the arrearage, resulting in a monthly obligation of approximately $462.04.

In September 2006, Father was current with his weekly child support payments and owed approximately $914 on the child support arrearage. In October 2006, Mother moved to Knox County, while the Children were visiting with Father for fall break. At the end of the visitation period, the Children remained with Father in Blount County. Father ceased payment of his child support obligation.

In March 2007, Mother returned to Blount County. On May 15, 2007, Father filed a petition, alleging that the Children had resided with him for approximately nine months and that Mother had "exercised very little, if any, overnight co-parenting time, ha[d] provided no support, ha[d] no stable home[,] and [did] not exercise any parental responsibility." Father requested child support and a change in residential custody pursuant to a modified parenting plan. Jordan moved back in with Mother following the filing of the petition.

An order was entered on April 24, 2008, designating Father as the primary residential parent of Jared and Mother as the primary residential parent of Jordan. The order provided that the parents had agreed that there was "no arrearage in child support owed by either party" and directed the parents to submit a permanent parenting plan for each child, reflecting "co-parenting times and child support and all other matters required by law." The April 2008 order was signed by the trial court. A competing order, providing that Father owed $7,188 in child support, was filed by Mother but not signed by the trial court. Neither parent submitted a permanent parenting plan. Five months later, Mother filed a motion to set aside the April 2008 order, alleging that the order did not represent the agreement of the parties. Jared turned 18 shortly thereafter.

In February 2009, the parents participated in mediation and submitted a modified parenting plan for the court's approval. The plan designated Mother as the primary residential parent of Jordan but evenly divided the residential time between the parents and provided that neither party was to pay child support. The plan did not address Father's child support arrearage from the divorce decree, the fact that Father had not paid child support

since September 2006, or the purported agreement reached in the April 2008 order. The plan was signed by both parents, approved by the trial court, and filed on February 9, 2009.

Approximately one year later, Mother filed a petition to show cause as to why Father should not be held in contempt of court for his failure to pay child support. Mother alleged that a substantial arrearage of child support had accrued pursuant to the court's "previous order." Mother did not assert which of the court's orders Father failed to follow.

In June 2010, a hearing was held on the matter at which Mother, Father, and Jared testified. Mother testified that Jordan turned 18 and graduated from high school in June 2010. She believed that she was owed child support from October 2006 until May 2010. She admitted that the Children had resided with Father for several months during that time and that she did not pay child support while the Children resided with Father. She alleged that following fall break in October 2006, Father refused to return the Children to her. She also admitted that she had participated in mediation in February 2009 and signed a parenting plan, acknowledging that Father was no longer tasked with payment of child support because of the amount of time that Jared spent with Father. She opined that she did not believe that the Children spent an equal amount of time with Father but did not deny the fact that Jared remained with Father when Jordan returned to live with her.

Father testified that both of the Children lived with him from October 2006 until May 2007. Father alleged that he attempted to return the Children but that Mother was either not at home or would not answer the door. He did not petition the court for a change of custody until May 2007 because he believed the Children would eventually return to Mother. Father presented the following outline of his expenses during the time that he cared for the Children:

TIME FRAME 10/06 - 4/07 (8 MONTHS)

| ITEM | MONTHLY AVERAGE FOR CHILDREN |
|------|------------------------------|
| Groceries | $476.00 |
| Water | 15.00 |
| Utilities | 67.00 |
| Rent | 223.00 |
| Total | $781.00/mo. ave |

Above figures do not include any costs of medical treatment, clothing, school expenses or [m]iscellaneous items such as haircuts, etc.

Child Support ordered at [$]113.76 [per] week or $492.96 [per month].

Father testified that Jared remained with him until January 2010. He admitted that even when the Children resided with him, Mother "occasionally" took the Children out to eat.

Jared confirmed that he and Jordan remained with Father following fall break in October 2006. He stated that he and Jordan visited Mother during Christmas and "other extended times" and that Mother visited with them and "occasionally would take them out to eat and give him gas money." He related that once Jordan returned to live with Mother, he and Jordan "made a conscious effort to try to visit with each parent about half the time." He believed that the amount of time he and Jordan spent with each parent was "approximately the same." He recalled that Father bought him a cellular telephone and a car shortly after his 16th birthday.

Following the presentation of the above testimony and arguments of counsel, the court entered several orders. In the final order appealed from, the court set aside the April 2008 order. The court held that Father owed $1,135.84 for the original child support arrearage and $3,944, subject to statutory interest, for unpaid child support from October 2006 until May 15, 2007, the date the petition to modify was filed. The court held Father in contempt for his failure to pay child support. Relative to the finding of contempt, the court incarcerated Father indefinitely at the Blount County Jail, beginning July 11, 2011. The court stated that Father could "purge himself of contempt by paying a purge payment in the amount of $500 toward his child support arrearage[], which [Father] ha[d] the present ability to pay."

Additionally, the court held that Father owed child support for the Children from May 16, 2007 through November 2008 and estimated that the Children spent 285 days with Mother and 80 days with Father. Using a child support worksheet, the court found that Father's obligation from May 2007 through December 2007 was $286 per month and his obligation from January 2008 through November 2008 was $436 per month. The court also held that Father owed child support for Jordan from December 2008 through May 2010 and estimated that Jordan spent 285 days with Mother and 80 days with Father. Using a child support worksheet, the court found that Father's obligation for Jordan from December 2008 through May 2010 was $315 per month. The court rejected any offset of the arrearage for the period that the Children resided with Father and directed him to pay $500 per month toward the total child support arrearage until the arrearage was paid in full.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Father as follows:

A. Whether the trial court erred in ordering Father to pay the total arrearage of support owed from October 2006 until May 15, 2007.

-4-

B.  Whether the trial court properly calculated Father's child support arrearage from May 2007 through May 2010.

C.  Whether the trial court erred in holding Father in civil contempt for failure to pay child support.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"[D]ecisions regarding child support must be made within the strictures of the Child Support Guidelines." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).  However, this court still reviews child support decisions "using the deferential abuse of discretion standard" because these decisions "retain an element of discretion." *Id.*  In matters of child support that are within the trial court's discretion, the court "will be found to have abused its discretion when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.*  Likewise, a trial court's decision to hold a person in civil contempt is "reviewed using the abuse of discretion standard of review." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

## IV.  DISCUSSION

### A.

Father contends that the court erred in ordering him to pay the child support arrearage from October 2006 through May 15, 2007, the period he cared for the Children prior to the filing of the petition for modification.  In the alternative, he asserts that he is entitled to a credit against any child support arrearage for expenses incurred while he cared for the Children.  Mother responds that the trial court properly refused to retroactively modify Father's child support arrearage prior to the date the petition to modify was filed.  She asserts

that relative to the court's refusal to offset the arrearage amount, Father failed to establish a successful claim for necessary expenses. She alleges that the expense report was insufficient to establish the actual cost of the goods or services provided or the fact that the expenses were necessary for the Children.

A child support order is a judgment, enforceable in the same manner as any other judgment issued by a court of law. *See* Tenn. Code Ann. § 36-5-101(f)(1); *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993). As relevant to this issue, the Tennessee Code provides,

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed . . . . If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage, at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support.

Tenn. Code Ann. § 36-5-101(f)(1).

Prior to 1987, a child support order could be modified retroactively under certain limited circumstances. *See Rutledge v.. Barrett*, 802 S.W.2d 604, 605-06 (Tenn. 1991). In 1987, in order to comply with conditions imposed by the federal government as a requirement for receiving federal assistance, Tennessee amended its statutes to remove the authority of state courts to forgive an arrearage in child support cases. *Id.* at 606. The 1987 amendment to our state statute "specifically bars retroactive modification" of a valid child support order. *Id.* at 607. Thus, once child support payments become due, they cannot be altered, reduced, or forgiven by the courts of this state. *Id.*; *see Johnson v. Johnson*, No. E2003-00130-COA-R3-CV, 2003 WL 22258180, at *3 (Tenn. Ct. App. Sept. 29, 2003) ("It is well-settled that child support payments cannot be altered, reduced or forgiven by the court once they become due.").

Consequently, the trial court was without authority to forgive any portion of Father's child support arrearage prior to the filing of the petition to modify his child support obligation because such forgiveness constitutes an unlawful retroactive modification of a valid child support order. *See State ex rel. Whitley v. Lewis*, 244 S.W.3d 824, 829-30 (Tenn. Ct. App. 2007) (holding that the trial court could not retroactively forgive an arrearage

accruing prior to the filing of the modification petition); *State ex rel. Phillips v. Phillips*, No. E2001-02081-COA-R3-CV, 2002 WL 31662544, at *2-3 (Tenn. Ct. App. Nov. 26, 2002).

Despite the clear prohibition of the retroactive modification of Father's child support obligation, the court had the authority to offset the arrearage based upon Father's claimed expenses. Such claims "sound in contract and must be commenced within six years after the necessaries were provided." *Peycheck v. Rutherford*, No. W2003-01805-COA-R3-JV, 2004 WL 1269313, at *3 (Tenn. Ct. App. June 8, 2004). This court has held that a credit against a child support arrearage is not a retroactive modification of support but is given in recognition "that the obligor parent provided the support the court ordered in the first place." *Id.* (citing *Netherton v. Netherton*, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. Ct. App. Feb. 26, 1993)). A credit against a child support obligation may be given to an obligor for such "payments made on behalf of [his or her] children if such payments [were] for necessaries that the custodial parent either failed to provide or refused to provide." *Id.* *4. "The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed." *Id.* "In order to maintain a successful claim for necessaries, [Father] 'must prove: (1) that the child needed the particular goods or services that were provided, (2) that [Mother] had a legal obligation to provide the goods or services, (3) that [Mother] failed to provide the goods or services, and (4) the actual cost of these goods or services.'" *Id.* (quoting *Hooper v. Moser*, M2001-02702-COA-R3-CV, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003)).

While Father's claim was within the relevant statute of limitations, the evidence before this court is insufficient to support a finding that Mother failed or refused to provide the necessaries claimed by Father. Mother testified that Father refused to return the Children. Jared also testified that he and Jordan visited with Mother for extended periods during the relevant time period and that Mother provided meals and gave him money for gas. Additionally, Father did not submit any supporting documentation with his expense claim reflecting the actual cost of the goods or services that he provided. Accordingly, we affirm the judgment of the trial court on this issue.

B.

Father contends that the trial court erred in setting the amount of child support owed from May 2007 through May 2010. Father argues that the court was without authority to impose a child support obligation for any period beyond February 2009 because the February 2009 mediated parenting plan provided that neither parent was obligated to pay child support. Father argues that the court also miscalculated the amount of time each child spent with each parent in the child support worksheets relative to the amount of support owed for the other

time periods. Mother responds that the court properly calculated the amount of support owed from May 2007 through February 2009.

The parents are in agreement that neither parent owed child support following the entry of the February 2009 mediated parenting plan agreement. Indeed, the judgment was final and was never set aside by the trial court. *See Swift v. Campbell*, 159 S.W.3d 565, 573 (Tenn. Ct. App. 2004) ("A judgment in a civil case becomes final if a notice of appeal is not filed within thirty days after the entry of a final judgment or an order denying a timely filed Tenn. R. Civ. P. 59 motion."). Accordingly, the judgment of the trial court is reversed insofar as it imposed a child support obligation on Father beyond February 2009.

Relative to the modification of support prior to February 2009, we note that a child support order is only eligible for modification if a significant variance exists between the amount owed and the proposed amount. Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(a). The Guidelines define a significant variance as:

> at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order[.]

Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(c). In determining whether a modification of support is possible, "a child support order shall first be calculated on the Child Support Worksheet using *current evidence of the parties' circumstances*." Tenn. Comp. R. & Regs. 1240-02-04-.05(3) (emphasis added). If a significant variance exists between the current order and the proposed amount, "such a variance would [generally] justify the modification of a child support order." Tenn. Comp. R. & Regs. 1240-02-04-.05(3). Additionally, "[a]n order may be modified to reflect a change in the number of children for whom a parent is legally responsible, *a parenting time adjustment*, and work-related childcare only upon compliance with the significant variance requirement[.]" Tenn. Comp. R. & Regs. 1240-02-04-.05(6) (emphasis added).

The original amount of child support ordered in the final decree of divorce was $113.76 per week or approximately $455 per month.[1] In order to modify the support obligation, the court had to find a 15 percent or $68 change between the amount of support currently ordered and the proposed amount calculated pursuant to the guidelines. Having reviewed the child support worksheets and the final order, it is apparent that the trial court directed Father to pay the amounts calculated in the child support worksheets without making

---

[1]This amount does not include the additional $7 per week that Father was tasked with remitting for the original child support arrearage.

the requisite finding that a significant variance existed between the current order and the proposed amount. If the court had made the requisite finding, it would have noticed that a significant variance between the current order and the proposed amount for the period of January 2008 through November 2008 was not present.

The court also failed to adjust the parenting time in consideration of the actual amount of time that each child spent with Father. The court found that the Children spent approximately 80 days with Father and 285 days with Mother. The evidence presented at trial preponderates against that finding. Jared testified that he and Jordan spent equal time with the parents. Mother testified that she did not believe the Children spent an equal amount of time with Father but Mother admitted that Jared remained with Father when Jordan returned to live with her in 2007.

With all of these considerations in mind, we reverse the judgment of the trial court insofar as it directed Father to pay an arrearage calculated using the new child support worksheets. Upon remand, additional evidence may be presented relating to the amount of time each child spent with Father. The trial court is directed to complete worksheets for the relevant time periods using current information for the relevant time period. The trial court must then compare the child support obligation reflected in the final decree of divorce with the obligation calculated in the new worksheets. If a significant variance exists between the two amounts as defined in the guidelines, the trial court should adjust Father's child support obligation accordingly and order Father to pay the arrearage with interest.

C.

Father asserts that the court erred in finding him in civil contempt. Father notes that the court did not issue findings of fact or even specify whether the contempt was civil or criminal. Father argues that he did not have the present ability to pay support at the time it was due and that his failure to pay support was not willful conduct. Mother responds that pursuant to Tennessee Code Annotated section 36-5-101, Father presumptively possessed the ability to pay child support as ordered. Mother notes that Father did not provide any evidence regarding his income or his inability to pay child support as ordered and that his failure to pay was willful because he was aware of the obligation but simply chose not to pay.

Despite Father's contention that it was unclear whether he was held in civil or criminal contempt, the record reflects that Father was held in civil contempt as evidenced by his punishment of imprisonment pending a purge payment of $500. *See* Tenn. Code Ann. § 29-9-104; *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). "Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce his or her rights under the order that has been violated." *Reed v. Hamilton*, 39

S.W.3d 115, 117-18 (Tenn. Ct. App. 2000). "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of his or her rights." *Id.* at 118. In general, the Tennessee Supreme Court has enumerated four essential elements of civil contempt claims based upon an alleged disobedience of a court order:

> (1) the order alleged to have been violated must be "lawful;"
>
> (2) the order alleged to have been violated must be clear, specific, and unambiguous;
>
> (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and
>
> (4) the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354-55.

Father does not contend that the order alleged to have been violated was unlawful or ambiguous or that he actually obeyed the order. Father asserts that his failure to comply with the order was not willful. In order to find a party in contempt for failure to pay child support, "the court must first determine that [the party] had the ability to pay at the time the support was due and then determine that the failure to pay was [willful]." *Ahern*, 15 S.W.3d at 79.

Here, the court found that Father was in willful contempt of the order contained in the final decree of divorce to pay child support. Mother asserts that Father presumptively possessed the ability to pay pursuant to Tennessee Code Annotated section 36-5-101. The final decree of divorce set the amount of child support pursuant to an agreement of the parents; therefore, the statutory presumption does not apply. However, Father's agreement of the amount contained in the final decree of divorce necessarily created a presumption that he was able to pay the amount of support ordered. The evidence also reflects that Father possessed the ability to pay the support during the relevant time period. Father purchased a car and a cellular telephone for Jared on his 16th birthday, which was within the time that Father failed to submit child support. Once Mother presented this evidence, the burden shifted to Father to prove his inability to comply with the support obligation. *See Chappell v. Chappell*, 261 S.W.2d 824, 831 (Tenn. 1952). The record before this court does not contain any evidence that Father was unable to comply with the court's order at the time support was due. Father's refusal to submit child support pursuant to the order was willful because he knew of the obligation but failed to fulfill the obligation. *See Konvalinka*, 249 S.W.3d at 357 ("[A]cting contrary to a known duty may constitute willfulness for the purpose

-10-

of a civil contempt proceeding."). Accordingly, the trial court did not err in finding Father in civil contempt for failure to pay child support.

As noted in *Ahern*,

> After a finding of contempt, courts have several remedies available depending upon the facts of the case. A court can imprison an individual to compel performance of a court order. This is typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order.

*Id.* at 79 (citations omitted). Here, the court found that Father had the present ability to pay the purge payment of $500 before it incarcerated Father. The record supports this finding because Father did not present any proof that he was unable to perform the act to secure his release. *See State ex rel. Moore v. Owens*, No. 89-170-11, 1990 WL 8624, at *3 (Tenn. Ct. App. Feb. 7, 1990). Accordingly, we conclude that the trial court did not err in incarcerating Father, pending his compliance with the court's order to pay the purge payment.

## V. CONCLUSION

The judgment of the trial court is affirmed in part, as to the calculation of the child support arrearage from October 2006 to May 15, 2007, the refusal to offset the amount of support owed by Father with the claim of necessary expenses, and the finding of civil contempt and incarceration of Father, pending the submission of the purge payment. The judgment of the trial court is reversed in part, as to the ordering of payment of support beyond February 2009 and as to the calculation of support owed from May 2007 through January 2009. The case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed one half to the appellant, Michael Estes, and one half to the appellee, State of Tennessee, ex rel. Rebecca Estes.

_____
JOHN W. McCLARTY, JUDGE