# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 13, 2011

# IN THE MATTER OF: CHRISTOPHER A. D.

**Appeal from the Juvenile Court for Davidson County**
**No. 164-628-91      Betty K. Adams Green, Judge**

---

**No. M2010-01385-COA-R3-JV - Filed November 20. 2012**

---

The mother brought a petition to modify support and for contempt, alleging that the father had willfully understated his income during an earlier proceeding to modify support. The juvenile court judge found that the mother had proved her allegations and awarded her a judgment of over $26,500 for back child support as well as attorney fees of over $12,800. We hold that the statutory prohibition against retroactive modification of child support disallows the award of pre-petition support. Accordingly, we are compelled to vacate the trial court's award of support for the time prior to the date on which the mother filed her petition to modify child support. We affirm the prospective modification and the award of child support from that date.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed as Modified**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Christopher A. Dorris.

David B. Lyons, Nashville, Tennessee, for the appellee, Sheila Shackleford.

## OPINION

## I. BACKGROUND

The dispositive issue in this appeal is whether a trial court may retroactively modify a child support order after finding that the obligor parent had understated his income to the court in a prior proceeding in order to reduce his support obligation. Before this appeal was assigned, the Tennessee Supreme Court granted permission to appeal in another case involving retroactive modification of a child support order that was obtained through misrepresentation. Because of its potential resolution of the issue in this case, we decided to hold our decision in this appeal pending the Court's decision. On October 1, 2012, the Tennessee Supreme Court issued its opinion in the case of *Hodge v. Craig,* No. M2009-00930-SC-R11-CV, 2012 WL 4486315, __ S.W.3d __ (Oct. 1, 2012 Tenn.). The Court's decision is, indeed, relevant to the issues herein, and the holdings in that opinion must necessarily be applied to the facts of the present case.

Christopher Dorris ("Father") and Sheila Shackleford ("Mother") became the parents of a child, Christopher D., on March 24, 1991. Father and Mother never married each other. In 1995 or 1996, Father married another woman, Donna Dorris ("Wife"). The earliest order found in the appellate record was entered by the Juvenile Court of Davidson County on September 20, 2000, in response to a petition by Mother to modify child support. The Juvenile Court Referee ordered Father to pay $359.10 per month in child support as well as fees, which resulted in a total obligation of $135.47 per week.

On March 4, 2004, the Department of Human Services ("DHS") filed a petition on behalf of Mother, who had been receiving public assistance. The petition recited that in 2003 Child Support Services had twice requested income and wage information from Father for a review of his child support obligation and that he had not provided the requested information. DHS accordingly asked the court to order Father to show cause why his child support should not be increased, and to require that all his future child support payments be paid by income assignment to the Central Child Support Receipting Unit.

Father filed an answer to the petition, which included a counter-petition for a temporary reduction in support. The Juvenile Court Referee conducted a hearing on June 30, 2004, during which Father testified that he had earned over $50,000 from his job at Metro Air Services in 2002, but that he had lost that job early in 2003 and formed his own company, Cargo Transport Services. His 2003 income tax return returned listed Father and Wife as co-owners of the business.

The Schedule C Form (Profit or Loss from Business) from the same return stated that Cargo Transport Services had gross receipts of over $78,000, but did not show a profit, but rather a loss of $1,757. Father also testified that his current income amounted to only $250 a week, which he earned by detailing cars. After hearing the evidence, the Referee concluded that there was no proof that Father had quit his job to avoid paying child support, as Mother had apparently alleged. He accordingly dismissed her petition, but left Father's child support obligation unchanged.

Father and Wife had a falling out in 2008. Wife filed a complaint for absolute divorce, and Father filed an answer and counter-petition for absolute divorce, in which he made assertions regarding ownership of the business and other assets. Wife contacted Mother and told her that Father had committed perjury at the June 2004 hearing by under-reporting his actual income, and she alerted Mother to the existence of Father's answer in the divorce action and other relevant public documents. This led Mother to file a petition for contempt and to modify child support on October 22, 2008. Mother alleged that Father had fraudulently understated his income in the earlier proceeding and failed to disclose his assets in order to avoid paying additional child support, and she asked the court to order Husband to pay her child support "retroactively to the date of the last hearing in June 2004."

The petition was first heard by the Juvenile Court Referee on April 8, 2009.[1] The referee also reviewed the court's prior child support orders and found no error in those orders. The referee did not address the allegations of perjury and fraud in Mother's petition, but dismissed her petition on the ground that the evidence in the 2004 hearing did not support an increase in child support. Mother filed a request for a *de novo* hearing before the Davidson County Juvenile Court Judge, which was granted. *See* Tenn. R. Juv. P. 4(c).

## II. THE FINAL HEARING ON MOTHER'S PETITION

At the final hearing before the judge, Father was questioned closely about his business dealings, and especially about the discrepancies between his prior testimony in Juvenile Court, his tax returns, and the sworn pleadings in the divorce case. His testimony as to the true ownership of the business was contradictory and confusing, and he claimed ignorance of many of its financial details. Father was asked if he was telling the truth when he swore in his divorce counter-petition that he was the sole owner and operator of Cargo Transport Services. He replied that he did not tell the truth because he was angry at Wife and did not want her "to take everything away from me."

---

[1] Christopher D. reached his eighteenth birthday and became emancipated in the month prior to the 2009 hearing before the Juvenile Court Referee.

When he was asked how much he had earned at the company and how much Wife earned, Father stated that he did not know. Asked how much he worked in the business in 2004 and 2005 and how much Wife worked, he responded "I have no idea. I don't know." He minimized his own involvement with the business during the period in question.

Mother introduced bank deposit slips into the record, showing that Father deposited $312,727 into the company account in 2004, even though his 2004 income tax return showed company revenue of only $199,450. Asked to explain the difference, Father initially said "I don't know. My tax lady done this. I don't know."[2]

When Wife was called to the stand her attorney stated that she had advised her client to invoke her rights under the Fifth Amendment not to testify in this case.[3] Accordingly, Wife declined to answer any questions about Cargo Transport Services, her tax returns, her own jobs, and any conversations she had with Mother.

The court set out its decision in a Memorandum Opinion and a Final Order, in which it explicitly stated that Father was not a credible witness and that his testimony was not to be believed. Among other things, the court found that Father had lied to the court in 2004 to avoid paying child support when he testified that his income was only $250 per week and that he had placed his business in his wife's name in part for the same purpose. The court also stated that it was entitled to infer that if Wife had answered the questions on which she exercised her fifth amendment privileges, the answers would not be favorable to her or to Father.

On the basis of the evidence in the record of Father's earning capacity, the court imputed income of $50,000 to him in 2004 and ordered him to pay retroactive child support in accordance with the child support guidelines that were in effect at that time for one child (21%). The court calculated what Father should have paid under the guidelines, subtracted the amount he actually had paid, and ordered him to pay the difference, amounting to $26,526.30 for back child support and statutory interest, as well as $12,982 for attorney's fees and expenses. This appeal followed.

---

[2]Father was also questioned about a Piper Cherokee airplane that the proof showed he had purchased for $19,500 shortly after he lost his job with Metro Air Services. He stated that he borrowed the money for the plane and that he used both the plane and a houseboat that he purchased at about the same time for business purposes.

[3]The attorneys for both parties had stated that Mother would testify at some point, but there is no transcript of her testimony in the record.

### III. RETROACTIVE MODIFICATION OF SUPPORT ORDER

There is a statutory prohibition against retroactive modification of child support, found at Tennessee Code Annotated § 36-5-101(f)(1). That statute reads in relevant part,

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. **Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties...**(emphasis added).

The statute was enacted in 1987 to bring Tennessee law in line with a federal statute that conditioned receipt of federal financial assistance on the adoption of procedures designed to improve the effectiveness of child support enforcement. The requirements of the federal statute included the guarantee that child support payments not be subject to retroactive modification. *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991) (citing 42 U.S.C. § 666).

As is clear from the language, Tennessee Code Annotated § 36-5-101(f)(1) prohibits modification of an existing child support order as to any time period prior to the date that an action for modification is filed and notice is given to the opposing parties. Thus, the statute would appear to bar the modification of any child support obligation incurred by Father prior to October 22, 2008, when Mother filed her petition for contempt and to modify support.

> Prior to the 1987 amendment of Section 36-5-101, retroactive modification of a child support order was permitted where it was necessary "to meet the ends of justice." *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991). As amended, however, the statute makes no provision for such a modification. The Tennessee Supreme Court has held, applying the plain language of this statute, that a valid child support order is not subject to retroactive modification. . . . Moreover, again relying on the plain language of the statute, the Tennessee Supreme Court held that **a child support order is not subject to challenge based on equitable defenses such as fraud**, because to do so would "defeat the very purpose of the amendment." *Rutledge*, 802 S.W.2d at 607.

*State ex rel. Whitley v. Lewis,* 244 S.W.3d 824, 829 (Tenn. Ct. App. 2007) (emphasis added).

We have upheld the prohibition against retroactive modification of child support in the face of equitable defenses in a number of cases, including *Brown v. Heggie*, 876 S.W.2d 98, 101 (Tenn. Ct. App. 1993); *State ex rel. Hickman v. Dodd*, W2008-00534-COA-R3-CV, 2008 WL 4963508, at *2 (Tenn. Ct. App. Nov. 21, 2008) (no Tenn. R. App. P. 11 application filed); *State ex rel. Hayes v. Carter*, W2005-02136-COA-R3-JV, 2006 WL 2002577, at *4 (Tenn. Ct. App. July 6, 2006) (no Tenn. R. App. P. 11 application filed); *In re T.S.R.*, W2003-01321-COA-R3-JV, 2004 WL 1361359, at *3 (Tenn. Ct. App. June 17, 2004) (no Tenn. R. App. P. 11 application filed); *State ex rel. Phillips v. Phillips,* E2001-02081-COA-R3-CV, 2002 WL 31662544, at *2-3 (Tenn. Ct. App. Nov. 26, 2002) (no Tenn. R. App. P. 11 application filed). The statute makes no distinction between retroactive increases or decreases. *Brown v. Heggie*, 876 S.W.2d at 101. *See, also*, *Bullington v. Hudson*, M1999-02772-COA-R3-CV, 2000 WL 489553, at *3 (Tenn. Ct. App. Apr. 26, 2000) (no Tenn. R. App. P. 11 application filed).

Thus, Tennessee Code Annotated § 36-5-101(f)(1) and its application by the courts prohibit retroactive modification of a child support order prior to the filing of a petition to modify. Herein, the trial court modified Father's child support back to the time of the prior child support order. The question, then, is whether an exception exists for misrepresentation of income.

## IV. *HODGE V. CRAIG*

In the recent case of *Hodge v. Craig,* the Supreme Court considered a claim based upon misrepresentation of the paternity of a child. Ms. Hodge persuaded Mr. Craig that he was the only individual who could possibly be the father. The parties married, but divorced after a marriage of nine years. The final decree of divorce incorporated a marital dissolution agreement that obligated Mr. Craig to pay monthly child support. He faithfully paid child support until the trial court approved a modified parenting plan that designated him as the child's primary residential parent. Thereafter, the mother began paying child support to him.

DNA evidence subsequently revealed that Mr. Craig was not the child's biological father. Ms. Hodge filed a petition requesting custody of the child and a modification of the child support order. Both parties acknowledged that Mr. Craig was not the child's biological father. The court returned the child to the mother's custody, terminated her child support obligation, and reserved all other matters for later resolution.

Mr. Craig then filed a counter-petition for "intentional or negligent misrepresentation," claiming that the mother knew or should have known that he was not the child's biological father. The trial court conducted a hearing, found that the mother had purposely defrauded Mr. Craig, and ordered the payment of damages for the child support,

medical expenses, and insurance premiums Mr. Craig had paid on behalf of the child.

On appeal, this court affirmed the trial court's findings as to the mother's misrepresentation. We nonetheless reversed the trial court's award of damages. In doing so, we followed the logic of *Rutledge v. Barrett, State ex rel. Whitley v. Lewis*, and other cases, by holding that the award to the father amounted to a statutorily prohibited retroactive modification of a child support order. *Hodge v. Craig*, M2009-00930-COA-R3-CV, 2010 WL 4024990 (Tenn. Ct. App. Oct. 13, 2010).

The Tennessee Supreme Court granted Mr. Craig's application for permission to appeal. The Court filed a unanimous opinion on October 1, 2012, which reinstated the trial court's award of damages. The Supreme Court framed the issues before it as follows:

> The first issue, presented solely by Mr. Craig, is whether Ms. Hodge's representations regarding the paternity of her son can support a claim of common-law fraud, intentional misrepresentation, or negligent misrepresentation. The second issue, raised by Mr. Craig and Ms. Hodge, is whether a damage award derived from Mr. Craig's post-divorce payments of child support, medical expenses, and medical insurance premiums is an impermissible retroactive modification of a child support order.

*Hodge v. Craig,* 2012 WL 4486315, at *7.

The primary holding of *Hodge v. Craig* is that a putative father may maintain an action for intentional misrepresentation based upon a mother's false statements as to the paternity of a child. A large portion of the opinion is devoted to a discussion of public policy surrounding that question.[4] The Court concluded that Tennessee public policy "does not prevent the former spouse of a child's mother from pursuing common-law damage claims against the child's mother based on her intentional misrepresentations regarding the identity of the child's biological father." *Hodge v. Craig*, 2012 WL 4486315, at *11.

The court then analyzed the appellate record and determined that it supported the conclusion of the trial court and the Court of Appeals that Mr. Craig had proved each of the elements of his intentional misrepresentation claim. The Court also held that Mr. Craig proved that he sustained monetary damages due to Ms. Hodge's intentional misrepresentation, including his court-ordered obligation to pay child support.

---

[4]As the court observed, among the legislative enactments in 1997, amended in 1998, and codified at Tenn. Code Ann. §§ 36-2-301 to - 322, were two provisions in the new statutes that "reflect the General Assembly's awareness of the existence of actions to rebut or disestablish paternity and the possibility that a person found not to be a child's biological father could pursue a claim for damages against the child's biological parents."

The court went on to discuss whether, having found that Mr. Craig had proved his common-law intentional misrepresentation claim, an award of damages based upon the amount of child support he paid amounted to a retroactive modification of child support of the kind prohibited by Tenn. Code Ann. § 36-5-101(f)(1). The court concluded that it did not and identified two reasons for that determination.

First, at the time of the judgment finding intentional misrepresentation, Mr. Craig was not under a legally enforceable obligation to pay child support: he did not owe any child support when the court ordered Ms. Hodge to pay child support to him, and he had never been delinquent in paying child support when he was obligated to do so. *Hodge v. Craig*, 2012 WL 4486315, at *17. There was thus no outstanding obligation to pay current support or arrearage. "Therefore, the 2009 damage award did not have the effect of reducing or extinguishing any child support arrearage owed by Mr. Craig." *Id*.

Second, the judgment of intentional misrepresentation did not purport to change or modify Mr. Craig's child support obligations as they had existed before he was relieved of any duty to support. *Id*. "At the time the 2009 judgment was entered, Mr. Craig had no legally enforceable obligation to pay Ms. Hodge child support. . ." *Id*.

Instead of a modification of child support, the relief granted was actually an award of damages in an intentional misrepresentation action. Mr. Craig established all the elements of an intentional misrepresentation cause of action and also established the pecuniary loss he suffered as a result of that misrepresentation. "The trial court did not err by ascertaining the amount of this pecuniary loss by considering the amount of child support, medical expenses, and insurance premiums Mr. Craig had paid on Kyle's behalf following the parties' divorce." *Id*.

The Supreme Court cautioned that it intended its ruling to be a narrow one. Among other things, the court stated that "[o]ur decision in this case is limited to the factual circumstances before us – a lawsuit filed by the former spouse of a child's biological mother **seeking damages for intentional misrepresentation of the child's parentage**." *Hodge v. Craig,* 2012 WL 4486315, at n. 31(emphasis added).

We conclude that the holdings in *Hodge* do not affect the application of the statute prohibiting retroactive modification of child support to the case before us. *Hodge* involved a claim for misrepresentation and a request for damages caused by that misrepresentation. That is not the situation herein. The action in this appeal was initiated by a petition to modify support that specifically asked the court "to modify child support retroactively."

As the Supreme Court made clear, the fact that damages awarded for misrepresentation of parentage, *i.e.*, the pecuniary loss caused by the misrepresentation, are measured or calculated by child support previously paid does not convert that award into a retroactive modification of support.

The case before us does not involve a claim of misrepresentation of parentage. It is undisputed that Father is the father. Instead, it alleges a misrepresentation of income by Father in a hearing regarding the appropriate amount of child support. We cannot conclude that the holding of *Hodge* recognizing a claim of intentional misrepresentation of parentage can be read to imply that a court has the authority to retroactively modify a child support order. Neither does its holding that an award of damages for such misrepresentation is not a retroactive modification of child support affect the prohibition of retroactive modification.[5]

A child support order is not subject to challenge based on equitable defenses such as fraud, because to do so would "defeat the very purpose of the amendment." *Rutledge*, 802 S.W.2d at 607. Consequently, we must hold that the Juvenile Court in the instant case lacked the authority to modify Father's support obligation for any time prior to Mother's filing of her petition on October 22, 2008.

## V. PROSPECTIVE MODIFICATION

A court does, however, have the authority to modify child support prospectively, from the date of a petition to modify. Tenn. Code Ann. § 34–1–102(b); *Lichtenwalter v. Lichtenwalter*, 229 S.W.3d 690, 693 (Tenn. 2007). The record shows that Mother filed her petition to modify child support on October 22, 2008. Father's obligation to support Christopher D. ended in May of 2009. Thus, if the evidence demonstrates that the requirements for an upward modification existed, then Mother would be entitled to the increased amount for the eight months for which a modification was legally available.[6]

A modification of child support requires a finding that a significant variance exists between the amount of the currently ordered support and the amount that would be due under the current facts and guidelines. Tenn. Code Ann. § 36-5-101(g); *Kaplan v. Bugalla*, 188

_____

[5]On appeal the parties dispute whether the requirements for relief under Tenn. R. Civ. P. 60 were met, even though no motion for Rule 60 relief was filed. Even if it had been, retroactive modification of a child support order is still prohibited by statute, including where relief is sought under Rule 60. *State ex rel. Whitley v. Lewis*, 244 S.W.3d at 830.

[6]The right to collect child support that becomes due during a child's minority is a right that remains vested in the custodial parent even after the child reaches his majority. *Lichtenwalter v. Lichtenwalter*, 229 S.W.3d at 693.

-11-

S.W.3d 632, 636 (Tenn. 2006). The current child support guidelines set out several different circumstances that would constitute "a significant variance" for purposes of the modification of a child support order. The most common is "at least a fifteen percent (15%) change in the gross income of the ARP (Alternative Residential Parent)." Tenn. Comp. R. & Regs. 1240-2-4-.05(b).

However, that is not what happened herein. Mother asked for a retroactive and prospective modification based upon Father's alleged falsification of his income in the 2004 hearing. The trial court found that Father had misrepresented his income; imputed to him income of $50,000 per year "for 2004 and beyond;" calculated the child support due on that income under the pre-income-shares support guidelines; assessed that monthly support for the 58 months from the July 2004 order to May 2009, the date of the expiration of the duty to support; and calculated the difference between that amount and the amount actually paid. The result was a judgment for Mother of $26,526.30 plus interest "for back child support."

On appeal, Father argues that the evidence preponderates against the trial court's finding that he falsified his income in the 2004 hearing in order to reduce his child support obligation. Mother argues that the evidence supports that holding. However, that is really not the question in determining whether a modification upward, prospectively was appropriate. However, neither party addresses the significant variance requirement.

The trial court imputed income to Father of $50,000 for 2004 and the following year, including the time period relevant to the 2008 petition for modification. Neither party has challenged the actual amount of income imputed. We have carefully reviewed the record herein, including Father's tax returns for 2006 and 2007, and find that such evidence supports a determination of Father's actual income was at least $50,000 per year for the relevant time period.

The trial court determined that Father's child support should be modified to $875 per month. Again, neither party challenges that amount or the methodology used to arrive at it.[7] In the interest of judicial economy and in an effort to save the parties additional time and money, we hold that Father's child support should be modified from the date of the petition to $875 per month. Accordingly, Mother is entitled to a judgment representing eight months of the increased support obligation. Assuming that Father should have paid $457.35 per

---

[7]The trial court used the pre-income-shares guideline methodology (applying 21% to Father's income) because it was determining 2004 support. Since the only allowable modification is for 2008 forward, the older method was not appropriate. However, neither party has challenged the way the trial court calculated the obligation, and neither has presented any evidence that would allow us to calculate the support due under the income shares model.

month more than he actually paid, the total amount of the judgment for child support should be $3,658.80.  We remand to the trial court for entry of an order for the correct judgment.

The only issue remaining is the question of attorney fees.  The trial court is authorized to exercise its discretion to award attorney fees to the prevailing party in an action for enforcement of  child support.  *See* Tenn. Code Ann. § 36-5-103(c).  The juvenile court found that Mother was the prevailing party and ordered Father to pay her attorney fees.  We have found that Mother prevailed as to the basic issue of modification.  In view of the facts of this case, we affirm the award of attorney fees to Mother.

## VI. CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and the judgment is modified as set out in this opinion.  We remand this case to the Juvenile Court of Davidson County for any further proceedings necessary.  The costs of this appeal are divided equally between the appellant and the appellee.

_____
PATRICIA J. COTTRELL, JUDGE